In re LAVELLE'S ESTATE.
IMMERTHAL v. FIRST SECURITY BANK
OF UTAH et al.

No. 7718. Decided September 11, 1952. (248 P. 2d 372.)

See 68 C. J., Wills, sec. 468. What constitutes undue influence by beneficiaries. 57 Am. Jur., Wills, sec. 349 et seq.; 96 A. L. R. 613.

*Lewis J. Wallace, M. Blaine Peterson,* Ogden, for appellant.

*Samuel C. Powell, Howell, Stine & Olmstead, Dobbs & Dobbs,* Ogden, *Louis Kabell, Jr.,* Evanston, Wyo., for respondent.

CROCKETT, Justice.

Mrs. Lucille Lavelle, a widow having no children, died leaving three testamentary instruments, each of which revokes any former wills. The proponents of each contest the validity of the others.

The first of these wills, made April 28, 1944, left the decedent's property to her husband, John T. Lavelle, and her half-sister, Kathleen Miller. Thereafter her husband died, and according to the will provisions the entire estate would have gone to Mrs. Miller.

Mrs. Lavelle's second will was signed July 28, 1948, leaving her home and furniture, the greater part of her estate, to a cousin, Marie Dodge, and making several bequests of personal property to relatives and friends, with the residue to Anna Barry, a sister of her deceased husband, but expressly disinheriting her half-sister, Kathleen Miller.

The third and last of the wills was executed July 21, 1949. It noted an intentional omission of all of Mrs. Lavelle's relatives or any other possible heirs and gave the estate to her "very good friend and benefactor Eric W. Immerthal" and her "devoted friend and benefactor Monte G. Hogg," one-half to each.

The lower court admitted the second will to probate, rejecting the third on the ground that it had been induced by undue influence upon the testatrix by Immerthal and Hogg.

This appeal is by Immerthal. He challenges the sufficiency of the evidence to sustain the court's finding of undue influence. No issue is raised as to the proper execution of the will nor as to decedent's testamentary capacity to make it.

A procedural point is considered first: Marie Dodge, respondent, contends that appellant failed to properly show in his brief, by reference to the record, wherein the evidence does not support the trial court's finding of undue influence and therefore the appeal must be considered as being prosecuted solely upon the judgment roll, citing *U. S. Building and Loan Ass'n* v. *Midvale Home Finance Corp.*,[1]

---

[1] 86 Utah 506, 44 P. 2d 1090, 1092.

in which the court stated:

"It is not pointed out in the unit holders' [cross-appellant's] brief or elsewhere wherein the evidence does not support the questioned findings, nor wherein the evidence touching such findings may be found in the transcript. Under such circumstances the appeal * * * must be regarded as being prosecuted solely upon the judgment roll."

In his original brief appellant contented himself with more or less general statements that the evidence did not support the finding of undue influence, maintaining that Immerthal and Hogg were not "anywhere around" when the will was drafted or executed and that

"* * * there is not a shred of evidence relating to undue influence on the part of Eric W. Immerthal or Monte G. Hogg relating to the execution of the third and last will. * * *"

The sketchiness of appellant's brief in this regard is excused in some degree by the difficulties inherent in attempting to point out specifically wherein there is "no evidence" to support a given finding. An appellant cannot be asked to go through the transcript, showing how the testimony reported on each page does not support the finding. Yet, insofar as is practicable, he must detail, with citation to the record where appropriate, the particulars wherein the evidence touching the finding is inconsistent therewith or is not of enough moment to sustain it.[2] In other words, it was the appellant's responsibility to show in his brief that the third will was not the result of the exercise of undue influence.

Respondents' brief treated the evidence and segregated it into numerous classifications all of which they say tend to show undue influence.

---

[2] See *Sandall* v. *Sandall*, 57 Utah 150, 193 P. 1093, 15 A. L. R. 620; *First National Bank* v. *Brown*, 20 Utah 85, 57 P. 877; *Utah-Idaho Sugar Co.* v. *Salt Lake County*, 60 Utah 491, 210 P. 106, 27 A. L. R. 874; *Highland Boy Gold Mining Co.* v. *Strickley*, 28 Utah 215, 78 P. 296, 1 L. R. A., N. S., 976.

Rule 75(p) (2), U. R. C. P., states:

"The reply brief * * * shall be limited to answering any new matter set forth in respondent's brief * * *."

In accordance with this rule, appellant made a rather thorough reply to contentions of respondents concerning the evidence. Viewing the whole matter as presented, we believe that appellant substantially met the requirements of the rule above quoted from *U. S. Building & Loan Association* v. *Midvale Home Finance Corporation.* Hence we examine the entire record and consider the merits of the appeal.

The contest over the validity of a will is an action at law, rather than in equity.[3] Consequently, the decision of the lower court cannot be overturned if there is any substantial evidence to support it.[4]

To declare a will invalid because of undue influence, there must be an exhibition of more than influence or suggestion, there must be substantial proof of an overpowering of the testator's volition at the time the will was made, to the extent he is impelled to do that which he would not have done[5] had he been free from such controlling influence,[6] so that the will represents the desire of the person exercising the influence rather than that of the testator.[7] This showing need not be based on proof of physical coercion or constraint.[8]

---

[3]*In re Alexander's Estate,* 104 Utah 286, 130 P. 2d 432; *In re George's Estate,* 100 Utah 230, 112 P. 2d 498; *Miller* v. *Livingston,* 31 Utah 415, 88 P. 338.

[4]*In re George's Estate,* supra; *In re McCoy's Estate,* 91 Utah 212, 63 P. 2d 620; *In re Alexander's Estate,* supra; *In re Hanson's will,* 50 Utah 207, 167 P. 256.

[5]*In re Bryan's Estate,* 82 Utah 390, 25 P. 2d 602.

[6]*In re George's Estate,* supra; *In re Goldsberry Estate,* 95 Utah 379, 81 P. 2d 1106, 117 A. L. R. 1444.

[7]*Anderson* v. *Anderson,* 43 Utah 26, 134 P. 553.

[8]Ibid.

However, as this court has heretofore held, mere opportunity, interest[9], confidential relation[10] or weakened physical condition of testator[11] yield no presumption of undue influence. These factors or combinations of ■ them do provide fertile ground for the exercise of such influence; and where they exist, the court is under a duty to carefully scrutinize the facts and circumstances relating to the execution of the will in question.[12]

From May of 1947 until her death in July of 1950, Mrs. Lavelle was a bedridden invalid, paralyzed on her left side by a series of strokes, and suffering from certain kidney and urinary disorders. Her closest relatives lived out of the state; so, except for the first six weeks after the onset of her illness, when her half-sister, Kathleen Miller, was with her, she had to be cared for entirely by hired personnel. Though Mrs. Miller was legal guardian of the invalid from August, 1947 to May, 1948, the responsibility of seeing to the decedent's wants devolved largely upon Eric W. Immerthal, a succession of over twenty housekeepers and nurses, and W. H. Loos, trust officer for the First Security Bank of Utah, which for a time administered a trust for Mrs. Lavelle and later became guardian of her estate.

Immerthal is a male nurse and masseur, who visited Mrs. Lavelle almost daily in the course of his professional responsibilities to her. With the passage of time he took more and more interest in her welfare and assumed greater responsibility for the well-being of his patient. He helped find replacements for the nurses and housekeepers, who were quitting with regular frequency because of the long hours and onerous duties involved in caring for this woman, who was periodically unable to control her body eliminations. It was from this association and service to testatrix by Immerthal that the supposed undue influence on his part resulted.

---

[9]*In re Goldsberry Estate*, supra.
[10]*In re Bryan's Estate*, supra.
[11]*In re George's Estate*, supra.
[12]See *Miller* v. *Livingston*, supra.

Mr. Hogg and Mrs. Lavelle became acquainted before her stroke when he was employed by her as a carpenter to transform part of her home into rental rooms. Later he moved into the home, forming with her an attachment, seemingly of great warmth, and as the court found, sustained an illicit relationship. Even so, the existence of such relationship, while it is a circumstance to be considered, is not in and of itself sufficient to support a finding of undue influence. Their illicit relationship was undoubtedly one of the factors which induced the affection Mrs. Lavelle had for Hogg. Nevertheless, the evidence is quite convincing that her affection for him was genuine; she spoke of their plans for marriage, referred to him as her future husband, and seemed really upset when he absented himself from her presence for a period of time. She gave him sums of money, some rather large, and items of personal property during her lifetime. Respondents urge that this supports their contention of undue influence; but to the contrary, the fact that they were given, and over a considerable period of time, is strong indication of the constancy of her affection and regard for him and corroborates the idea that she wanted to make provision for him in her will. Where the affection and desire of a testatrix is genuine, it matters not that the illicit relationship may have played a part in inducing it.[13]

Conceding the impropriety of their intimacy and also remembering that the motives of a man who formed such a liason with a partially paralyzed woman older than himself (she was almost 60, he in his early 50's) certainly would be suspect, yet those circumstances alone, which in the main form the basis of the respondents' case as to Hogg, do not support a finding of undue influence with respect to the making of the will.

[13]See *In re Goldsberry Estate*, supra, wherein Mr. Chief Justice Wolfe discusses *In re Ford's Estate*, 70 Utah 456, 261 P. 15.

It should be here observed that the lower court did not find that Hogg and Immerthal acted in concert, the only evidence on the point being to the contrary. Reports of Hogg's immoral association with Mrs. Lavelle were made by Immerthal and his wife to Mr. Loos, the trust officer. When it was found necessary to take Mrs. Lavelle to a rest home, Immerthal indulged in a stratagem to lure Hogg out of the car, drove off without him and made efforts to keep her location a secret from him.

As to Immerthal, there also is no direct evidence of undue influence. It is true that he interested himself in the management of Mrs. Lavelle's personal affairs (in January of 1950, after the execution of the third will, he became guardian of her person). In view of the fact that none of her relatives manifested such interest, this seems to have been a fortunate circumstance for her welfare. He helped to arrange for her care when she stayed at home, by artifice managed to get around her resistance to entering the hospital and used similar means to get her into a rest home about six months prior to her death. The desirability and necessity for her to be so hospitalized and later placed in a rest home was corroborated by others. To Immerthal's credit, it must be said that there is independent evidence that on one occasion Mrs. Lavelle told him that if he would care for her until her death, he could have the property; he refused this offer.

The strongest single circumstance respondents have to rely on concerning undue influence is evidence that visitors were discouraged from seeing decedent and that "No visitors" signs were placed on her house and on the hospital room during her illness. There is no evidence and no finding that Hogg was connected with this activity and the evidence concerning Immerthal in this regard is very limited. It is not shown that he affixed the signs. There is evidence that at least some of them were displayed with the approval of the attending physician and that the sign at the hospital

during the time the third will was executed was put up on the doctor's authorization. On one occasion when Mrs. Lavelle was alone in her house for a few days just before Christmas of '49, Immerthal told a neighbor lady that he was trying to get her to go to the hospital and that

"If you ladies and neighbors won't come in and interfere, I'll be able to get her to the hospital much sooner, but if you keep interfering it will take me longer".

Although there is some dispute in the evidence concerning the matter, it is sufficient so the trial court could properly find, as it did, that Immerthal had discouraged visitors from seeing Mrs. Lavelle. His conduct is explainable as being the means of getting the recalcitrant lady into the hospital and of preventing information of her whereabouts from being learned by Hogg. She was at no time isolated from her relatives or friends who had a legitimate interest in visiting her.

As to the actual execution of this third will: Two or three days prior thereto, Immerthal, apparently at testatrix's request, phoned an attorney previously unknown to her, and asked him to call on her at the hospital. The attorney went there, was introduced to her by Immerthal, who then left and never thereafter appeared during any of the further conversations concerning the will, nor at the time of its execution. At that first meeting, Mrs. Lavelle discussed her affairs and directed that her entire estate be willed to Monte Hogg. After the will was prepared in accordance with these instructions and returned to her, Mrs. Lavelle announced to the attorney:

"No, I've changed my mind. * * * I want to give him [Hogg] half of what I have, and I want to give Eric Immerthal half. I've been thinking about it. Eric has done a lot for me. I want him to have half, and I want Monte Hogg to have half."

Pursuant to these directions the will was changed and was later executed.

The directions first given with respect to the third will did not include Immerthal as a beneficiary. As he apparently neither liked nor approved of Hogg, it is unlikely that he had exerted any undue influence upon decedent in Hogg's behalf. To get Mrs. Lavelle to include him as a part beneficiary, it would seem that Immerthal would have had to exercise at least some influence during the one-day period between the lawyer's first and second visits with her. There is no evidence of any such occurrence.

We are aware that ■

"* * * undue influence is seldom subject to direct proof, but, as a general rule, must be established by inferences and circumstances * * *";

but it must also be kept in mind that

"* * * it likewise is true that a finding of undue influence cannot rest upon mere suspicion. There must be some substantial facts upon which the inferences and deductions are based, and the circumstances relied on should clearly point out the person who it is alleged exercised the undue influence and his acts constituting the alleged undue influence."[14]

This thought is supplemented in the case of *In re* ■ *Bryan's Estate*:[15]

"* * * Undue influence must be proved. It will not be presumed from mere interest or opportunity. The opportunity to exercise influence, unless combined with circumstances tending to show its exercise, affords no presumption that it was in fact exercised."

The evidence above recited is all respondents can marshal to support the claim that Immerthal "dominated her affairs, and overcame her will." It amounts to no more than mere opportunity, colored by respondents' hopeful suspicions.

[14]*In re Hanson's Will*, supra [50 Utah 207, 167 P. 261].
[15]*In re Bryan's Estate*, supra [82 Utah 390, 25 P. 2d 610].

Respondents also make much of the contention that the will constituted what they claim is an "unnatural disposition" of decedent's property as supporting the idea that the will was procured by undue influence. That depends a good deal upon the interpretation placed upon the words "unnatural disposition."

"In a legal sense a will is unnatural only when contrary to what could be expected of the particular individual in question, considering the type of man he was as manifested by his views, his feelings, his intentions and the like. When natural by this test, it cannot be said to be unnatural in the legal sense, however much it may differ in his dispositions from those ordinary men make in similar circumstances."[16]

The mere fact that testatrix preferred in her will those who were close to her, rendering her assistance, and ministering to her physical and emotional needs, to the exclusion of her relatives, who did not give her that care and attention, does not present an instance of unnatural disposition.[17]

There is another aspect of the case which is strongly persuasive that this third testament represented the will of Lucille Lavelle: It is indisputable that after its execution she lived for a year: about six months in Ogden and about six months in the Holladay rest home; during this time she had communication with others but made no effort to revoke the will or to make another. There is no evidence and no finding that she was incompetent at any time after the will's execution; and no reason appears why she did not have ample opportunity to change it if it had not conformed to her desires. As a matter of fact, there is no indication that she ever expressed any dissatisfaction with it.

It is suggested that the facts in the instant case bring it under the ruling of this court in the case of *In re Hanson's Estate*.[18] There a Dr. McDonald, the beneficiary

[16] *Cude* v. *Culberson*, 30 Tenn. App. 628, 209 S. W. 2d 506, 524.
[17] See *In re Walther's Estate*, 177 Or. 382, 163 P. 2d 285.
[18] 87 Utah 580, 52 P. 2d 1103.

under the will, had cunningly insinuated himself into the favor of decedent, a shy woman with a "child mind". He had secretly and surreptitiously associated with her, entering the home of decedent's sister without the knowledge of others, taking decedent out and staying with her into the late hours of the night. But he never took her out publicly. There was also evidence that he lied to the decedent concerning the purported mismanagement of her estate by her sister's husband. McDonald lured the girl to his apartment, and in the presence of witnesses previously unknown to her, got her to sign a will which he had previously prepared, naming himself as beneficiary. The will cut off without a cent her sister, with whom she had lived and by whom she had been cared for for many years. This was a true instance of an unnatural disposition. On the basis of the foregoing and other similar evidence, the trial court found, and this court upheld, undue influence and lack of testamentary capacity to make the will, which invalidated it. A comparison of the facts in that case and the instant one readily shows that there is no evidence of influence here in any degree comparable to that shown in the *Hanson* case.

Due allowance is made for Mrs. Lavelle's age and poor physical condition so that her mind may have been more susceptible to guileful importunings than it otherwise would have been. We agree that the amount of influence necessary to overcome the will of the testator varies.

"\* \* \* as the strength or weakness of mind of each testator varies, the amount of influence necessary to dominate a mind impaired by age, disease, or dissipation being obviously less than that required to control a strong mind."[19]

But Mrs. Lavelle was certainly not possessed of a "child's mind" as was the victim in the *Hanson* case. In fact, the testimony shows that she was wilful even to the point of being cantakerous with those about her. This and the fact

---

[19]*In re Bryan's Estate*, supra.

of her refusal to go to the hospital and the rest home except upon the use of cajolery and stratagem demonstrates that she was not as susceptible of having her will overcome by the influence of others as respondents suggest.

To declare a will invalid upon the showing made in this case would unduly limit the right of a competent but bedfast person, ill and in dire need of help, to leave her property to the individuals who serve her in the extremity of need. The testatrix should not be prevented from devising her property according to her own wishes merely because an opportunity for undue influence exists; nor should the beneficiaries be deprived of their devise because such opportunity arose through their service to and association with her.

Viewing the evidence and every fair inference therefrom most favorably to the finding of the trial court, we cannot find it sufficient to support the conclusion reached that the third and last will was induced ▪ by undue influence. The cause is remanded to the District Court for the purpose of having that instrument probated as the last will and testament of Lucille Lavelle.

Costs to appellant.

WOLFE, C. J., and WADE and McDONOUGH, JJ., concur.

HENRIOD, J., concurs in the result.