342 P.2d 875

Nathan G. CHUGG, Incompetent, by Orley J. Chugg, the Guardian of his Estate, Plaintiff and Appellant,

v.

Dale CHUGG and La Reta Chugg, his wife, Defendants and Respondents.

No. 8954.

Supreme Court of Utah.

July 20, 1959.

Arthur Woolley, Ira A. Huggins, Ogden, for appellant.

Dale T. Browning, George B. Handy, Ogden, for respondents.

KELLER, District Judge.

■ This appeal challenges a determination by the trial court that Nathan G. Chugg was competent, and that he voluntarily executed certain documents conveying his home and farm to his cousin, Dale Chugg. The deed and bill of sale conveying the property to Dale are in proper form and duly executed, and the deed is acknowledged and recorded. This establishes prima facie the genuineness of the transaction and casts upon the party attacking it the burden of showing invalidity of the documents by clear and convincing evidence.[1]

■ This case being in equity, we review the evidence, but nevertheless indulge considerable credit to the findings of the trial court because of his advantaged position and will not disturb them unless the evidence clearly preponderates against the findings.[2] It is the plaintiff's contention that even under such rule the evidence is such as to compel the resolution of the issues in his favor.

At the time of interest here Nathan Chugg was a bachelor, 63 years of age. He had spent his lifetime acquiring and improving a dairy farm at Far West, in Weber County. It consisted of approximately 72 acres of land with a house, dairy barn and a herd of purebred jersey cattle. Prior to 1956 he had said he wanted to be relieved of some of the work. He had tried to do so without much success until he employed his second cousin, the defendant Dale Chugg, to work on his farm. Dale was a young man of 21 years, married and had a family; and had manifested an interest in Nathan's dairy cattle and operation. They agreed that Dale and his family would move to the farm as soon as a proper place could be obtained for Nathan's aged mother, who was then living with him. The arrangement was that Dale and his wife were to take care of the farm work and also of Nathan. Dale

---

1. As to deed: Richmond v. Ballard, 7 Utah 2d 341, 325 P.2d 839; Northcrest, Inc. v. Walker Bank & Trust Co., 122 Utah 268, 248 P.2d 692. As to other written instruments, see Paulsen v. Coombs, 123 Utah 49, 253 P.2d 621; Prudential Federal Savings and Loan Ass'n v. Hartford Acc. & Ind. Co., 7 Utah 2d 366, 325 P.2d 899.

2. Peterson v. Holloway, 8 Utah 2d 328, 334 P.2d 559.

was to receive $175 per month out of which he was to pay all of the household expenses for his family and for Nathan. This arrangement was to continue until Nathan was 65 years old, when he would be able to receive social security benefits. The agreement was later to be reduced to writing and give Dale the entire property after the death of Nathan.

In January, 1957, shortly after Dale's family moved to the farm, Nathan became ill and the doctor ordered him to the hospital. Before going he talked to his accountant, H. E. Erickson, about his income tax and business affairs. He advised the latter that he wanted papers made to transfer his property to Dale. To accomplish that purpose the accountant contacted Attorney George B. Handy, who prepared what is referred to as a "Ten Year Option" in favor of Dale, permitting him to buy the farm, but reserving a life estate in Nathan's mother. While in the St. Benedict's Hospital in Ogden on January 31, 1957, this option was presented to Nathan. He wanted the nominal consideration changed to $1,-000, which was done, and he then signed it. After undergoing surgery he was released from the hospital on February 24, and returned to live with Dale and his family until late May, when it was necessary for him again to be hospitalized.

On June 24, 1957, before Nathan was to enter the Veterans' Hospital in Salt Lake City, Dale requested Mr. Handy to come to the farm, indicating that he wished to exercise the option and consummate the transaction. The deed and bill of sale which had been prepared in January were then signed by Nathan in the presence of Dale, his wife and Mr. Handy. For the stated reason that prior dates were typed in and had to be scratched out, Mr. Handy advised that it would be better if another deed were made and executed. Accordingly, on July 17, 1957, the same parties went to the Veterans' Hospital where Nathan signed the deed and accepted the check for $1,000 from Dale, instructing the latter to deposit the check in a savings account for Nathan, which was done.

Upon learning something about the business here involved, Nathan's brother, Orley J. Chugg, obtained letters of guardianship upon him in October, 1957, and started this action to declare the documents invalid on the ground of fraud, undue influence and that Nathan was incompetent to execute them. The trial court rejected the contentions of the plaintiff and found the issues in favor of the defendants.

As is not uncommon in cases of this character where a person of advanced years has made such a conveyance of his property, the questions of his competency and whether undue influence was exercised upon him are closely interrelated. The pertinent inquiries are these: did the grantor have the capacity to understand his interest in and relationship to the persons and the property

involved; the nature and consequences of the documents he executed; and did he have the mind and will to act of his own volition in relation thereto. To analyze the attack made upon the judgment it is appropriate to survey briefly the evidence bearing upon the questions just stated.

Testimony concerning Nathan's condition in January comes from his sister, Myrtle C. Leatham, a beneficiary under a will which Nathan previously executed; and from her husband, George W. Leatham. They said that when Nathan was in the St. Benedict's Hospital in Ogden, he was "very sick," "in no condition to talk" nor to understand them and was in fact in a "pitiful condition." Plaintiff had no direct evidence as to Nathan's condition on June 24, when he signed the first deed. But a Mr. Dockstader, a patient in the Veterans' Hospital, testified that when he signed the later deed (July 17) Nathan did not appear to know of what he was doing. Other witnesses called by the plaintiff testified concerning Nathan's illness and unawareness of what was going on, but did not clearly fix the dates of their observations in relation to the execution of the documents. Dr. William D. O'Gorman, a qualified expert, gave his opinion, based upon a study of the hospital records, that Nathan would not have been competent to understand such a transaction while he was in the St. Benedict's Hospital in January.

It is not to be questioned that the plaintiff's evidence standing alone would be sufficient to support a finding that Nathan was incompetent, at least at some times during which the questioned transactions occurred. However, as will presently be seen, there are other important aspects of the evidence which are in harmony with the findings of the trial court. In that regard it is to be observed that there are some weaknesses in plaintiff's evidence: in the first place, for the most part the evidence as to Nathan's incompetency is not focused specifically upon the particular times of the execution of the documents. Secondly, the medical testimony of Dr. O'Gorman suffers from the frailty that he never personally observed the patient, but made his diagnosis only from records; and third, practically the only direct evidence as to Nathan's incompetency at the time of execution of the documents is from witnesses having a high degree of self-interest, which provides a basis for discounting it if the fact trier so desires.[3] However, more important than all of the foregoing is the substantial countervailing evidence supporting the position of defendants.

As to the medical phase of the testimony, in opposition to that of Dr. O'Gorman, Dr. Harvey T. Wheelwright, a physician of some years' training in psychiatry, testified that upon the same basis of a study of the records of the hospital that in his opinion

3. See Page v. Fed. Sec. Ins. Co., 8 Utah 2d 226, 332 P.2d 666.

Nathan was competent and only "mildly ill" in January. Dr. Irven Moncrief, Nathan's personal physician, also stated that he was perfectly competent in January, and that he saw him at about weekly intervals thereafter, and that he was at all times competent. This view as to his competency, with variations as to the observations made, was supported by the testimony of the accountant, Mr. Erickson, Frank Macintire, J. Donald Handy; as well as by the attorney, George B. Handy, and the defendants Dale and La Reta Chugg. The latter three witnessed the signing of the final deed in the Veterans' Hospital and affirmed Nathan's competency and the voluntariness of his actions at that time.

In addition to the direct evidence concerning competency the trial court could take into consideration all of the facts and circumstances relating to the transaction having a bearing on the likelihood of Nathan's acts being natural and voluntary. There was testimony that he was extremely fond of his dairy farm; that he had expressed a desire that it be continued as a unit; that he wanted to get someone who had sufficient interest and industry to take it over as he got older; and that he had stated that Dale seemed to meet those requirements. It also appears that there was a lack of interest in Nathan and his farm on the part of his other relatives. Thus the court could well have regarded it as not unnatural that he would desire to transfer his property to Dale. This idea finds further support in the testimony of a disinterested witness. A. W. Cheney, a real estate agent, approached Nathan in May, 1957, with a proposal to list the farm for sale, Nathan advised him that he did not want to do so because of the option arrangement with Dale with which he expressed his satisfaction. Mr. Cheney also testified that Nathan appeared to be entirely competent.

Another significant aspect of this case is that after executing the option in January, manifesting his intent that Dale should succeed to his property, Nathan was released from the hospital and had about three months in which to seek redress if he felt there had been any undue influence exerted upon him,[4] or could have changed his mind and refused to sign the deed and bill of sale if he thought he had made a mistake.

■ Upon the basis of the evidence as summarized in this opinion it is our conclusion that it does not preponderate against the findings of the trial court. On the contrary, there is ample basis therein upon which to reject plaintiff's contention that he had proved by clear and convincing evidence that Nathan Chugg was either incompetent or a victim of undue influence.

4. See In re Lavelle's Estate, 122 Utah 253, 248 P.2d 372, 378. It was pointed out as significant that the testator had several months to change his will had it been induced by undue influence.

Judgment affirmed. Costs to defendants (respondents).

CROCKETT, C. J., and WADE, HENRIOD and McDONOUGH, JJ., concur.

CALLISTER, J., not participating.