Larry B. **RENTMEISTER,** Plaintiff
and Respondent,

v.

**June R. DeSILVA et al., Defendants**
and Appellants.

No. 14366.

Supreme Court of Utah.

July 19, 1976.

Richard H. Thornley, of Froerer, Horowitz, Parker, Thornley & Critchlow, Ogden, for defendants-appellants.

Pete N. Vlahos, of Vlahos & Knowlton, Ogden, for plaintiff-respondent.

TUCKETT, Justice.

The plaintiff initiated these proceedings for the purpose of enforcing the provisions of an inter vivos trust established by Della Zillah C. Rentmeister who was the grandmother of the plaintiff and the mother of the defendants. A declaration of trust was drafted by attorney for Della Zillah C. Rentmeister, the settlor, on October 3, 1968. The trust instrument was subscribed by the settlor and the three trustees herein named as defendants on that day. The settlor reserved the right to amend or revoke the trust and to change the beneficiaries named therein. Article III, paragraph E, of the trust instrument contained the following language:

> After the payment of debts and expenses and the withdrawal of all personal effects as hereinabove provided, Larry B. Rentmeister shall have the right to withdraw from the trust estate the sum of $5,000.00. In the event that he shall fail to make such withdrawal, or should die before making such withdrawal, said sum shall be distributed by Trustees to his surviving descendants and dependents for the purpose of providing such descendants and dependents with care, support, maintenance, medical care, and education.

On November 8, 1971, the settlor amended paragraph E above set out to provide that Larry B. Rentmeister, the plaintiff, was given the right to withdraw from the trust estate the sum of $7,000 instead of the $5,000 provided for in the first trust declaration. Otherwise the provisions of the trust remained intact. Paragraph F of

Article III of the trust provided as follows:

> After the payment of debts and expenses and the withdrawals as hereinabove provided, Trustees shall divide the balance of the trust estate into equal shares, one for each of Grantor's children then living, and one for each of Grantor's children then deceased, leaving living descendants.

And the further provision of that article provided as follows:

> Upon the death of a child of Grantor or lawful descendant of a deceased child of Grantor for whom a trust is then held, such trust, to the extent not appointed as hereinabove provided, shall be apportioned in partial shares among his or her living lawful descendants upon the principle of representation, which partial shares shall be held, administered, and distributed as separate trusts . . . .

It is the defendants' contention that the settlor did not intend that Larry B. Rentmeister should participate in the distribution of the trust as provided for in paragraph F as above set forth in that he was only to receive the sum of $7,000 as provided for in paragraph E as amended. In support of that contention the defendants called the attorney who prepared the trust instrument for the settlor who testified in effect that it was intended by the settlor and by him that Larry should not participate and become a beneficiary except as to the sum certain provided for in paragraph E and due to a scrivener's error he was not excluded from the provisions providing for distribution of the balance of the trust estate after the payment of debts and expenses and that paragraph F should have been drafted so as to exclude Larry from participating in the general distribution of the remainder. The only witness testifying was the attorney who prepared the trust instrument.

It is the plaintiff's contention that the settlor could have amended or revoked the trust during her lifetime, but that the trust instrument cannot be reformed after the settlor's death which occurred on November 2, 1973. The attorney who testified on behalf of the defendants stated he had been advised by the settlor that her son Ned was a member of the armed forces of the United States and that he was killed in 1944, and that she was a beneficiary of a $10,000 insurance policy. The plaintiff was the only living child of Ned and a grandson of the settlor.

The trial court found that the evidence showed an absence of fraud or undue influence and concluded that the trust instrument could not be reformed. The court dismissed the defendants' counterclaim and granted judgment to the plaintiff. The defendants are here seeking a reversal.

No claim is made that the terms of the trust instrument are in any way ambiguous. A review of the language used in the instrument leads us to the conclusion that the terms used therein are well defined and have clearly understood legal meanings which the settlor did not seek to amend or to alter during the period from October 3, 1968, and her death on November 2, 1973. During approximately five years the settlor amended the trust instrument once but she did not attempt to alter or modify the provisions of the declaration, which dealt with the distribution of the remainder of the trust estate. We conclude that the language of the instrument was adopted by the settlor as her own and if there was a mistake in the drafting of the instrument, it nevertheless expressed the settlor's true intention.[1]

The judgment of the court below is affirmed. Respondent is entitled to costs.

1. Dunnett v. First Nat. Bank & Trust Co., 184 Okl. 82, 85 P.2d 281; *Hurst v. Kravis,* 333 P.2d 314, 318 (Okl.); In re Baum's Estate, 4 Utah 2d 375, 294 P.2d 711.

HENRIOD, C. J., and ELLETT and MAUGHAN, JJ., concur.

CROCKETT, Justice: (concurring, with comments).

I am in entire agreement with the decision affirming the judgment of the trial court. But it seems to me that there could be a misunderstanding as to two statements made therein. Therefore, regretting the necessity of this addendum, I feel impelled to state as follows:

1. The conclusion of the opinion states that ". . . if there was a mistake in drafting the instrument, it nevertheless expressed the settlor's true intention." This strikes me as a paradox. That is, if there was a mistake, it would *not* express her true intention. But the fact appears to be that, however it was drafted, she signed it, and presumably, willingly and knowingly. It is therefore reasonable to conclude that it represented her intent. Moreover, as the main opinion points out, it was thereafter amended and sufficient time elapsed that if it had not done so, she could and should have changed it.[1]

The opinion mentions that the terms of the trust instrument are not ambiguous, thereby seeming to imply that unless they are, a mistake could not be remedied. In my judgment this is not true. For example, suppose the lawyer had used an entirely different form and had settled the property upon a complete stranger and that the settlor had signed without noticing the mistake. Surely, no one would argue but that if those facts were shown by clear and convincing evidence, the instrument could have been reformed even though there was no uncertainty or ambiguity therein. The authorities uniformly affirm that equity will reform an instrument which is merely ambiguous or uncertain; and it will, a fortiori, reform one which is completely mistaken.[2]

---

1. That continuance in existence of will where there was opportunity to correct may be considered as evidence that it represented testatrix's intent see *In Re Lavelle's Estate*, 122 Utah 253, 248 P.2d 372 (1952).

2. *Peterson v. Eldredge*, 122 Utah 96, 246 P.2d 886 (1952) ; and see 76 C.J.S. Reformation of Instruments, § 25, and numerous cases therein cited.