**In the Matter of the ESTATE
OF Mervin J. RUSSELL,
Deceased.**

**Gene J. RUSSELL, Geneil P. Russell,
Ada J. Russell, and Helen Russell
Green, Appellants,**

v.

**Georgia J. RUSSELL, Appellee.**

**No. 900184.**

Supreme Court of Utah.

May 7, 1993.

———

Wendell P. Ables, Salt Lake City, for Mervin J. Russell Estate and Georgia Russell.

J. Franklin Allred, Stephanie M. Saperstein, Salt Lake City, for Gene Russell.

Charles M. Bennett, Salt Lake City, for amicus L.S. McCullough.

DURHAM, Justice:

Gene J. Russell, Geneil P. Russell, Helen Russell Green, and Ada J. Russell (contestants), the children and first wife of decedent Mervin J. Russell, appeal from a jury verdict in a testacy proceeding which validated the decedent's will and the document cancelling an antenuptial agreement with his second wife, Georgia J. Russell. We affirm.

The dispute centers around real property that Mervin Russell repeatedly promised to

his son Gene but ultimately devised to Georgia. The contestants initiated a formal testacy proceeding contesting the validity of the decedent's will, two documents cancelling an antenuptial agreement, and a quitclaim deed. Georgia instituted an informal proceeding to probate the decedent's will and an action to quiet title, both of which depend on the outcome of the testacy proceeding we now consider.

Mervin and Ada Russell were married in 1938 and divorced in 1971; in 1972, Mervin married Georgia. Mervin and Georgia executed an antenuptial agreement on January 11, 1972, to protect his children's interest in his property. However, on June 25, 1982, while hospitalized, Mervin signed a quitclaim deed giving Georgia a joint interest in the property. On August 14, 1982, Mervin and Georgia executed a cancellation of the antenuptial agreement, again while he was hospitalized. The couple executed a second cancellation of the same agreement on January 24, 1983. Finally, on November 9, 1983, Mervin executed a will naming Georgia as the sole devisee. He died in 1985.

Gene, Helen, and Ada alleged that the four documents Mervin executed during his second marriage were the product of Georgia's undue influence and that he lacked the capacity to execute the documents. The jury found no undue influence but did find a lack of capacity with respect to the quitclaim deed and the first antenuptial cancellation the decedent signed while hospitalized. However, even though the jury invalidated two documents, Georgia nonetheless became the sole recipient of the decedent's property because the jury validated the decedent's will and the second cancellation that devised the property to her.

The contestants contend that the trial court erroneously required them to stipulate concerning their expert witness's testimony and further erred in describing the stipulation to the jury. In addition, they allege that the trial court applied an incorrect standard of proof on the issue of undue influence in the procurement of a will. Finally, Georgia claims that the contestants' notice of appeal was defective; we do not discuss this claim because we find it to be without merit.

## STIPULATION

At trial, the contestants intended to present expert witness testimony to show that Georgia signed Mervin's name on one of the four documents and attempted to disguise her handwriting. After the expert began testifying, Georgia's counsel interrupted and asked to approach the bench. Following a conference at the bench, the trial court excused the jury and decided to submit the evidence to the jury in the form of a stipulation. Despite objections by the contestants' counsel, the trial court announced the stipulation to the jury but somewhat misstated the content of the stipulation. Specifically, the trial court told the jury that the witness would offer an opinion about the disguised signature. However, Georgia's counsel had stipulated not only to the witness's opinion, but also to several key facts, namely, that Georgia had in fact signed her husband's name and that the signature did appear to be disguised.

The contestants first claim that the trial court erred in forcing them to stipulate rather than permitting them to call their witness. While their counsel did note his reluctance to rely on the stipulation, we do not agree that the trial court improperly imposed it. The trial court has considerable discretion to manage the admission of evidence under rule 611 of the Utah Rules of Evidence,[1] and the stipulation was apparently suggested to save time and to allow the witness in question to leave the trial. The contestants rely on criminal cases suggesting that parties should be allowed to offer proof by testimony rather than by stipulation. *See, e.g., State v. Flo-*

---

1. Rule 611(a) allows the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time...." Utah R.Evid. 611(a) (Supp.1992).

*rez*, 777 P.2d 452, 454–56 (Utah 1989); *State v. Bishop*, 753 P.2d 439, 475 (Utah 1988). Those cases, however, all involve rights and standards of proof in criminal proceedings and are not controlling. Rule 611 gives a trial court broad control over the mode and manner in which testimony is offered. Unless such discretion is abused, we will affirm its exercise. Here, the trial court's obvious intention was not to exclude the evidence but simply to see that it was presented to the jury in an efficient manner. That certainly was within the court's authority under rule 611.

■ Next, the contestants allege that the trial court's misstatement of the actual content of the stipulation prejudiced them. At trial, their counsel challenged the trial court's version of the stipulation, and the trial court acknowledged its error. However, the trial court concluded that its error was harmless, and we agree.

The stipulated testimony concerned the signature on the unnotarized cancellation of the antenuptial agreement dated August 14, 1982. However, the jury invalidated that document based on lack of testamentary capacity. Therefore, because the document was declared invalid anyway, the misstatement could not have harmed the contestants with respect to that document. In addition, in light of Georgia's testimony that she signed Mervin's name at his request after reading the cancellation to him at the hospital, the misstatement would not have affected the verdict on the other documents. We thus agree with the trial court that the misstatement was harmless error. Moreover, even if the evidence might have cast some doubt on Georgia's story had the trial court stated it correctly, it would nonetheless have been insufficient to prove undue influence.

## STANDARD OF PROOF FOR UNDUE INFLUENCE

At trial, the court instructed the jury that the contestants had the burden of establishing by clear and convincing evidence that the decedent's will was procured through Georgia's undue influence. The contestants point out that Utah law is unclear as to the correct standard and argue that the trial court should have applied a preponderance of the evidence standard.

■ Despite the debate on the proper standard of proof for undue influence in the execution of a will, we do not reach the issue here because the contestants failed to preserve it for appeal.[2] First, nothing in the record indicates that they requested an instruction on the preponderance of the evidence standard as applied specifically to wills; instead, the record reveals only a generic instruction defining a preponderance of the evidence. We have held else-

2. Our cases have applied numerous and sometimes inconsistent standards. Many of the cases refer to "substantial proof" or "substantial evidence." In one case, we required "substantial facts ... and the circumstances relied on should clearly point out the person who it is alleged exercised the undue influence and his acts constituting the alleged undue influence." *In re Lavelle's Estate*, 122 Utah 253, 248 P.2d 372, 378 (1952) (citations omitted). Such language suggests something greater than a preponderance of the evidence standard.

However, one year later, we noted that once valid execution was proven, "it then became incumbent on the contestants to prove by a preponderance of the evidence that the testatrix did not have a sound and disposing mind at the time she executed the Will or that she was acting under fraud, menace or undue influence." *In re Buttars' Estate*, 123 Utah 596, 261 P.2d 171, 172 (1953) (citations omitted). Georgia suggests that the preponderance of the evidence language in *In re Buttars' Estate* applies only to testamentary capacity, but that reading is inconsistent with the structure of the sentence. The preponderance language, as it is placed, modifies both capacity and undue influence, as the use of the disjunctive makes apparent. This would suggest that the preponderance of the evidence test applies.

Georgia compares cases alleging undue influence and fraud in challenges to deeds and real estate conveyances that apply a clear and convincing test and argues that the same test should apply to undue influence in a will. *Northcrest, Inc. v. Walker Bank & Trust Co.*, 122 Utah 268, 248 P.2d 692 (1952) (applying clear and convincing test to attack on deed); *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (1952) (applying clear and convincing test to alleged fraudulent conveyance).

We acknowledge that this question requires clarification. However, because the issue was not properly preserved for appeal, we decline to decide it in this case.

where that where a party did not tender a written instruction at trial, he or she may not allege on appeal that the trial court failed to instruct the jury properly as to the burden of proof. *Fuller v. Zinik Sporting Goods Co.*, 538 P.2d 1036, 1037 (Utah 1975).

Second, while the contestants argue that they needed only to object orally to the instruction, their brief fails to cite to any such objection in the record, and our review of the record has not revealed one. It is possible, of course (although the contestants have not alleged it in their brief), that counsel objected during an off-the-record discussion with the trial court. This court considered an objection to jury instructions under similar circumstances in *Hansen v. Stewart*, 761 P.2d 14 (Utah 1988). In *Hansen*, counsel and the trial court conferred off the record in chambers concerning jury instructions. All agreed that some objections had been raised, but no one remembered the specific objections. We held that the grounds for objections must be "distinctly and specifically stated" on the record. *Id.* at 16. Similarly, we noted previously that the burden of compiling an adequate record for appeal rests with the parties. *Franklin Financial v. New Empire Develop. Co.*, 659 P.2d 1040, 1045 (Utah 1983). The contestants here have failed to carry this burden.

█ Finally, the contestants urge this court to exercise its discretion under Utah Rule of Civil Procedure 51 to review the allegedly erroneous instruction. Rule 51 provides in pertinent part that "the appellate court, in its discretion and in the interests of justice, may review the giving of or failure to give an · instruction." Utah R.Civ.P. 51. We have held that we will do so only where the aggrieved party has presented a "persuasive reason" and "special circumstances warranting review." *Hansen*, 761 P.2d at 17 (citations omitted). We are not persuaded that this case meets that standard.

█ We decline to exercise our discretion under rule 51, in part because we have read the entire trial transcript as part of our review of the contestants' claims and find no compelling reason to review the challenged instruction. Our cases are unclear as to the correct standard of proof for undue influence, typically referring only to "substantial proof." *In re Lavelle's Estate*, 122 Utah 253, 248 P.2d 372, 375–76 (1952); *In re George's Estate*, 100 Utah 230, 112 P.2d 498, 499–500 (1941); *In re Hansen's Will*, 50 Utah 207, 167 P. 256, 261 (1917). However, the evidence of undue influence in this case would be insufficient under *either* standard of proof. As we have articulated in the past, undue influence requires more than "mere suspicion" and must be based on "substantial facts." *In re Hansen's Will*, 50 Utah 207, 167 P. at 261. Such is not the case here.

Affirmed.

HALL, C.J., HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.