Ashby Minor JAMES, Appellant,

v.

Naoma Fleming HITCHCOCK et al., Appellees.

No. 13234.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 22, 1958.

Rehearing Denied Feb. 19, 1958.

See also 294 S.W.2d 859.

———◆———

Ward & Brown, Corpus Christi, Ellis L. Clark, Rockport, for appellant.

Joe Caldwell, Rockport, for appellees.

POPE, Justice.

Naoma Fleming Hitchcock and others sued Ashby Minor James and others in trespass to try title for the recovery of 32 acres of land, known as Outlots 156, 157, 158 and 159, of the Lamar Townsite in Aransas County, Texas. Those lots are located on the east side of the Lamar Peninsula, on or near the shore of St. Charles Bay. The disputed boundary between those lots and lands owned by defendants resulted in this suit. A jury found that plaintiffs matured title under the five and twenty-five year limitation statutes, and that defendants had not perfected limitation title under the ten and twenty-five year

statutes. This appeal presents several important questions: (1) Does the evidence support the findings of limitations in favor of the plaintiffs? (2) If not, did the plaintiffs prove a common source by relying upon a partition decree? (3) Did the plaintiffs prove a superior title from the common source? In connection with this third point, plaintiffs rely upon a copy of an old unrecorded lost map and a question is presented, whether copies are admissible in evidence to prove a conflict between the boundaries, and, if the map is admissible, whether the lines on the map control over lines actually run and located by a ground survey.

■ Defendants, for several reasons, attack the findings that the plaintiffs matured limitation title under both the five and twenty-five year statute. Both of these statutes require the adverse claimant to prove peaceable and adverse possession for the required period of time. Arts. 5509 and 5519, Vernon's Ann.Civ.Stats. The proof was that defendants leased these lands for grazing purposes and that they were so used, up to September, 1955, by defendants' lessees. Plaintiffs leased the property for grazing purposes in September, 1955, and shortly thereafter this suit commenced. Prior to 1955, the only thing that plaintiffs did in connection with this property was to "look" at it. This was by way of going to the fence line and looking over the fence. On one occasion in 1954, plaintiffs walked "inside the fences all the way round." That was all the use that plaintiffs produced, and that is no evidence of use. The findings on adverse possession must fall for lack of proof. Hart v. Rochelle, Tex.Civ.App., 170 S.W.2d 245; McDonald v. McCrabb, 47 Tex.Civ.App. 259, 105 S.W. 238; Pendleton v. Snyder, 5 Tex. Civ.App. 427, 24 S.W. 363.

Did the plaintiffs prove common source? Plaintiffs rely upon a partition decree for common source. Defendants deny that the partition decree is common source. Plaintiffs connect their title with a 1914 partition decree which followed from an earlier entry of a partition judgment in 1910, in Cause No. 424, Aransas County, in the case of Lillian Vineyard v. D. M. O'Connor. In the 1910 judgment the O'Connors, through whom plaintiffs claim, were adjudged owners of $^{13}\!/_{16}$ of certain tracts of land on Lamar Peninsula, and the remaining $^{3}\!/_{16}$ were adjudged to Kate Edwards, Lillian Vineyard, Mattie B. James, individually and as executrix of the estate of Ashby S. James, J. M. Thornton and Mae Dannie Thornton. Plaintiffs proved that the defendants own and claim through those persons.

In 1914, the partition decree in that same suit set over certain specific lands to the O'Connors, through whom plaintiffs claim. The O'Connors received 5,511 acres of land described by metes and bounds. Those lands are not in dispute. They received "Also the following lots, tracts or parcels of land in the Town Tract of Lamar, County of Aransas, and State of Texas, according to the map or plat of said Town Tract, to-wit: In the Eastern division of said Town Tract: Blocks * * *. Also Out Lots Nos. 156, 157, * * * each containing 6.81 acres; No. 158 containing 10.-67 acres; No. 159, containing 7.95 acres, * * *."

Kate Edwards and the others, through whom defendants claim, received "Six Hundred and Thirty-six acres of land, more or less, situated in Aransas County, Texas, a part of a League of Land surveyed for Isaac E. Robertson, Assignee of Wm. Lewis and particularly described as follows, to-wit:

"Beginning at the S.W. corner of said tract of 636 acres of land, more or less, hereinabove allotted to the plaintiff Lillian Vineyard, in fence, Thence S. 0 deg. 17' E with said fence 1559.1 varas to corner of said fence for a S.W. corner of this tract; thence N. 89 deg. 56' E. with another fence at 1122 varas to a corner of same, Thence South 1 deg. 39' W. with an-

other fence at 304.5 varas to another corner of said fence, Thence North 89 deg. 19′ E. with another fence 1228 varas to a stake on the west shore of St. Charles Bay, Thence, following said West shore of St. Charles Bay, with its meanders, in a northerly direction, to the S.E. corner of said tract of 636 acres of land, more or less, hereinabove allotted to the plaintiff Lillian Vineyard, Thence west with the south line of said tract of 636 acres of land, more or less, hereinabove allotted to the plaintiff Lillian Vineyard, 2578 varas to the place of beginning."

Plaintiffs allege that the four Outlots which they claim under the partition decree are actually inside the south-west corner of the 636-acre tract which the defendants claim under the decree. The disputed area is illustrated by this sketch which is not drawn to scale:

Defendants seek a reversal of the judgment because plaintiffs, in relying upon a partition decree, failed to connect themselves with the common source. Defendants rely upon Willoughby v. Jones, 151 Tex. 435, 251 S.W.2d 508, 512; Shull v. Diaz, Tex.Civ.App., 236 S.W.2d 629, and Sun Pipe Line Co. v. Wood, Tex.Civ.App., 129 S.W.2d 704, 707. Plaintiffs, however, reason that this case is unlike those cited, inasmuch as they were cases where the partition decree awarded Blackacre to one person and Whiteacre to another. In this case, they reason, the decree actually awarded the same disputed land to both plaintiffs' predecessors and to defendants' predecessors. Certainly, when we have disputed common lines between grantees of a common grantor, that grantor is the common source. Young v. Trahan, 43 Tex.Civ. App. 611, 97 S.W. 147; Huth v. Heermann, 5 Tex.Civ.App. 655, 24 S.W. 664.

Rule 798, Texas Rules of Civil Procedure, declares that a plaintiff need not "deraign title beyond a common source."

The rule speaks of title, not possession. The partition suit concerned possession, but not the title. Houston Oil Co. of Texas v. Kirkindall, 136 Tex. 103, 145 S.W.2d 1074. "The partition is of the possession, and not of the title." Medina Oil Development Co. v. Murphy, Tex.Civ.App., 233 S.W. 333, 334; Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Davis v. Agnew, 67 Tex. 206, 2 S.W. 43, 2 S.W. 376. It is our conclusion that the burden is on a plaintiff to trace his title back to a common source of the title rather than a common possession. The Supreme Court in Garza v. Cavazos, 148 Tex. 138, 221 S.W.2d 549, 553, said: "Therefore, he was the common source of title regardless of any mistaken contention made by the petitioner, that the partition judgment in Cause No. B–4437 was the common source of title." Plaintiffs exclusively relied upon the partition decree for their proof of common source. In this they proved a common possession, but failed to prove a common source of title. For this reason the judgment must be reversed and rendered, but we shall discuss the other points in the case.

Did plaintiffs prove their title was superior to that claimed by defendants, assuming they had proved common source? Plaintiffs relied upon a copy of an old map for their proof of a superior title, the argument being that a map will control the calls of the metes and bounds description in the original partition decree. Plaintiffs say that the original decree gave their predecessor the four lots "according to the map or plat of said Town Tract." They say that "the map," though not recorded and not otherwise identified by any of the proof or judgment in the partition suit, was and is a term which has an accepted meaning and has had for almost a hundred years. They say that it refers to a map, supposedly made about 1848, and known as the "Jones Map," which laid out the town-site of Lamar into lots and blocks. The original map is lost. Over defendants' objections, plaintiffs introduced a map from the court papers in a suit which was contemporane-

ous to the 1914 partition decree. That map in turn had come from a still earlier suit tried in 1877. We shall call that map the 1877 Map. The south one-fourth of that map shows a platting of the old town of Lamar. Just above and north of the lots was pasture land, and the map shows that north of Outlots 156, 157 and 158, is the tract which the defendants claim. The map bears the title, "Map of Oldtown of Lamar and adjacent property. Traced from Map furnished by Texas Land & Title Co., Percival & Son, Engineers." Plaintiffs also offered in evidence a map which was prepared in 1929 and filed in 1955 in the office of the County Clerk of Aransas County. That was the first recorded map of Lamar Townsite. This second map bears the inscription, "Percival's Copyright Map of Lamar. For detailed information see Fred M. Percival." We shall call that map the Percival-Jones Map. The oral testimony shows that Percival, in preparing this map did not have access to the original "Jones Map." Instead, he used a copy of the Jones Map which a Mr. Brundrett had. Defendants also objected to the introduction of this map, but the court also admitted it in evidence. The 1877 Map and the Percival-Jones Map are not identical. The Percival-Jones Map shows only the townsite. Unlike the 1877 Map, it shows Lots 97 through 108 are in Aransas Bay, and shows the configurations of Lots 26, 27, 31, 32, 95 and 96 differently from the 1877 Map. The recorded map is a reconstructed map, prepared from a copy of the Brundrett copy of the Jones Map. Nevertheless, the proof is that the Percival copy is generally accepted and used by all engineers as the best and most reliable information about the south part of Lamar Peninsula.

The term "the map" as used in the partition deed, referred to the Jones Map which was never recorded. The two maps offered in evidence by plaintiffs are inexact, but they are substantially correct copies of that map of the townsite. Neither map, however, purports to be a correct survey of the lands north of the townsite. The Percival-

Jones Map does not include those lands at all, and the 1877 Map is not helpful in connection with the lands. It contains lines and markings for the area to the north, which are incomplete, unexplained and unintelligible. It appears more as a working copy than as a final draft.

■ We consider the maps admissible in evidence, as being the best evidence of what appears to be a well-known but lost map which has been the basis for conveyances on the Peninsula for a hundred years. Fenzl v. City of Houston, Tex.Civ.App., 63 S.W.2d 729; 26 C.J.S. Deeds §§ 30f, 101b; 6 Thompson on Real Property, Sec. 3376 (Perm. Ed.).

■ The controlling legal point, after admitting the maps in evidence, is whether the reference to "the map" in the partition decree which gave Lots 156–159 to the O'-Connors in 1914, is a description which controls the description for the 636-acre tract. Plaintiffs reason that in case of a conflict between a description by metes and bounds and a description by reference to a map by lot and block number, that the latter must prevail. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1089, 85 A.L.R. 391. However, there is the additional rule which applies in a case where a survey was actually made upon the ground. That rule is restated in Smith v. Boone, 84 Tex. 526, 19 S.W. 702:

> " * * * but if there is a discrepancy between the map and the survey (actually made on the ground) the survey must prevail, if the position of the points and lines established by the survey can be proved."

When we go to the evidence, we find nothing that indicates that the original Jones Map was anything more than an office survey. In the original field notes of the surveyors who worked out the lines in order that the 1914 partition decree could be entered, we find the statement: "The lots and blocks in the town tract are not included herein." Compared with this, all of the evidence shows that the survey of the 636-acre tract was actually made on the ground. The field notes were incorporated into the decree in describing the 636-acre tract. From the field notes and the decree we learn that the survey started at the north end of Lamar Peninsula and worked south toward the townsite. The surveys commenced at a stake near the south channel of Cavassa Creek, and worked south to an iron pipe on the north shore of Copano Bay. Copano Bay bounds the Peninsula on the west. The survey followed the meanders of that Bay to a fence line which coursed in an easterly direction across the Peninsula to St. Charles Bay, which bounds the east side of the Peninsula. This carved out the north 5,511 acres of land called the O'Connor Tract. The O'Connors received that tract in addition to the four disputed Outlots. In the fourth call of the field notes for this large block of O'Connor land, there was a call for a corner in the south fence which was 3775.6 varas west of St. Charles Bay. The surveyors then commenced at that corner in that fence to begin the survey of a second tract, the Vineyard Tract to the south. They then worked south along an established fence line for 1293 varas to a corner in that fence. They then worked east to St. Charles Bay, and north to the south fence line of the 5,511-acre tract and followed that line back to the west. This tract of 636 acres was called the Vineyard Tract. The surveyors then began the survey of the third tract, which was the Edwards Tract which defendants' predecessors obtained in the partition. They took as their beginning point, the southwest corner of the Vineyard Tract immediately to the north. That was a corner in the fence, and from that corner they worked south 1559 varas along the fence to still another fence corner, for the southwest corner of the Edwards Tract. Reference to the field notes for this tract shows that the surveyors then followed a fence toward St. Charles Bay for 1122 varas to a corner, then followed the fence 304.5 varas to the south to another fence corner, and then 1228 varas along the fence

to a stake on the west shore of St. Charles Bay. They went north along the meanders of the bay to the south line of the Vineyard Tract and then closed by following that line to the west, the point of beginning. These lines, actually marked and identified on the ground, control over the "hypothetical or imaginary line" on the map. Woods v. Robinson, 58 Tex. 655; Smith v. Boone, 84 Tex. 526, 19 S.W. 702.

■ Not only was this survey actually made upon the ground, but it called for corners on and lines along established fences, which were then in existence. The evidence shows that the west fence line for the Edwards and Vineyard Tracts was built in 1890. The record shows that the south line of the Edwards Tract was already erected when the surveyors ran their lines between 1910 and 1914, and that in 1920 those fences were standing. There was a dispute on the limitations issues on whether these fences were continuously maintained, but nobody denies that the lines were already established and were actually followed to locate the Edwards Tract. The fences are still on the lines called for by the partition decree. Hence, the description of the 636 acres which called for established fences, the location of which has not been changed, would also control over the reference to "the map" in describing the four Outlots. The "evident intention of the parties fixes the line at the fence," and this controls over the map. Mullaly v. Noyes, Tex.Civ.App., 26 S.W. 145, 146; City of Dallas v. Schawe, Tex.Civ.App., 12 S.W.2d 1074; Bell v. Wright, Tex.Civ.App., 59 S.W. 615; 6 Thompson on Real Property, Sec. 3377 (Perm.Ed.). Those old fence lines are entitled to grave respect and prevail over the hypothetical lines on the lost map. Bell v. Wright, Tex.Civ.App., 59 S.W. 615, 617; 8 Am.Jur., Boundaries, Sec. 58; 11 C.J.S. Boundaries § 51 b (2).

■ Defendants have presented other points, but we do not deem it necessary to discuss them, inasmuch as the points discussed show that the judgment upon the verdict is not supported by evidence, and because the record shows that the plaintiffs failed to prove common source and that their title is superior to that of the defendants. The cause must, therefore, be reversed and rendered that plaintiffs, appellees here, take nothing.

Reversed and rendered.