Grace F. PARSHALL, Appellant,

v.

Frankie S. CRABTREE, Appellee.

No. 15287.

Court of Civil Appeals of Texas, San Antonio.

June 19, 1974.

Rehearing Denied Nov. 27, 1974.

Bradford F. Miller, San Antonio, for appellant.

Solomon Casseb, Jr., Richard G. Strong and Alvin L. Huth, San Antonio, for appellee.

CADENA, Justice.

Defendant, Grace F. Parshall, appeals from a judgment of a district court of Frio County, following a nonjury trial, awarding plaintiff, Frankie S. Crabtree, easements across defendant's land as a means of access to plaintiff's land and enjoining defendant from interfering with plaintiff's use of such easements.

On and prior to February 19, 1930, G. W. Davis was the owner of a tract, consisting of approximately 19½ acres, out of the southwest part of Subdivision 30, Pablo Ortiz Survey No. 1411, Abstract No. 530, in Frio County, Texas. The land owned by Davis corresponds to the property identified in the accompanying diagram as Blocks 1, 2, 3 and 4, and did not include the tract, at the northwest corner of the diagram, on which appears the name "Frazier." The accompanying diagram is based primarily on a plat introduced in evidence as plaintiff's exhibit 3 and on a survey based on such plat. The diagram shows the division of Block 4 into six lots, as reflected in plaintiff's exhibit 3, but does not show the division of Blocks 1, 2, and 3 into 60 lots. The plat relied on by plaintiff shows five strips, each 40 feet wide, which are identified simply as "road" or "street." In the accompanying diagram, the designations "Road X," "Road Y," "St. A," "St. B," and "St. C" have been arbitrarily assigned by us to these strips.

On February 30, 1930, G. W. Davis and wife conveyed to Mary E. Koett "all that certain block 4, Lots 1–2–3–4–5 and 6 out of subdivision No. 30 of Pablo Ortiz Survey No. 1411 Frio County Texas, being in all six acres more or less." This deed contained no reference to any map or plat purporting to reflect a subdivision of the 19½ acre tract into 4 blocks or the subdivision of block 4 into lots.

The evidence supports the finding of the trial court that at the time of the conveyance from G. W. Davis and wife to Mary E. Koett there was no means of access to the land conveyed except over the remaining 13½ acres retained by Davis or over lands owned by strangers to the transaction. The land conveyed by Davis to Mary E. Koett is now owned by plaintiff.

About three months later, on May 15, 1930, Davis conveyed the remaining 13½ acres to Beatrice Poe, describing it, in effect, as the original tract of 19½ acres "save and except" the six-acre tract previously conveyed by Davis and wife to Mary E. Koett. Title to this tract of 13½ acres, which is identified on the diagram as Blocks 1, 2 and 3, is now vested in defendant.

The trial court ruled that plaintiff was entitled to easements across defendant's land over the strips identified on the diagram as "Road X" and "St. C."

The judgment of the trial court is based on a finding to the effect that, in conveying block 4 to Mary E. Koett on February 19, 1930, Davis and wife described the land being conveyed "by referring to the plat which was received in evidence" as plaintiff's exhibit 3 and that Mrs. Koett "relied" on such plat and used it to locate the

land she had purchased; as well as on the doctrine of easements by necessity.

■ Texas follows the generally accepted rule that a conveyance of land by reference to a plat showing streets and roads creates in the grantee easements over the streets and roads shown on the plat which abut the land conveyed. Baylor University: Houser, Notes, 20 Baylor L.Rev. 359 (1968). The rule is applicable even where, as here, the plat has not been recorded and the streets and roads have not been dedicated to public use. Dykes v. City of Houston, 406 S.W.2d 176 (Tex.1966); Ward v. Rice, 239 S.W.2d 823 (Tex.Civ. App.—San Antonio 1951, writ ref'd n. r. e.); 3 Powell, Real Property, Section 409 (rev. ed. 1972).

However, this doctrine cannot be relied on to support the judgment below. As already pointed out, the deed to Mary E. Koett contains no reference to the plat relied on by plaintiff, or to any other map or plat. Nor does the evidence support the conclusion that Davis exhibited plaintiff's exhibit 3 to Mary E. Koett or otherwise referred to it during the negotiations which culminated in the sale of the property.

The only evidence concerning plaintiff's exhibit 3 was given by Mary E. Koett's nephew, who was 18 years old in February, 1930. He stated that soon after the purchase of the land by his aunt she had plaintiff's exhibit 3 in her possession, and that he knew, of his own knowledge, that she had received the plat from Davis. This testimony does not tend to show that Davis exhibited the plat during the negotiations or that Mary E. Koett received the plat from Davis before the sale was consummated and the deed executed and delivered. Further, the record makes it clear that the witness was not present during any stage of the negotiations leading to the purchase of the land by his aunt, nor was he present when the deed was executed

and delivered. Despite his statement to the effect that his testimony related to matters within his own knowledge, it is obvious that, as he admitted, his testimony to the effect that his aunt received exhibit 3 from Davis is based entirely on what she told him. The testimony is plainly hearsay and lacks probative force.

The same is true of the nephew's testimony to the effect that, in making the purchase, his aunt "relied" on having the right to use the roads and streets shown on plaintiff's exhibit 3. It may be true that, since the deed described the land conveyed as lots 1–6, block 4, it is permissible to infer that there was in existence a plat showing the subdivision of the Davis land into 4 blocks, with at least block 4 being divided into six lots. However, the critical question here is not a reference to a plat which showed the subdivision into blocks and lots, but a reference to a plat, specifically, plaintiff's exhibit 3, which showed roads and streets as shown on that exhibit. In this connection, it should be noted that there is no testimony indicating when the exhibit was prepared, by whom it was prepared, nor for whom it was prepared.

Plaintiff's reliance on James v. Hitchcock, 309 S.W.2d 909 (Tex.Civ.App.—San Antonio 1958, writ ref'd n. r. e.), is misplaced. In *James* the instrument expressly referred to the map in question. Further, the evidence there established that the maps relied on were copies "of what appears to be a well-known but lost map which has been the basis for conveyances . . . for a hundred years." 309 S.W. 2d at 914.

■ However, the law is well settled that when an owner of land conveys an inner portion of such land, and the portion conveyed is entirely surrounded by land of the grantor, or by land of the grantor and land owned by others, an easement for the purpose of access to the land conveyed is created across the retained land of the

grantor. 21 Tex.Jur.2d, Easements, Section 20 (1961). In the case before us the evidence establishes unity of ownership of the alleged dominant (plaintiff's) and servient (defendant's) estates at the time of the conveyance by Davis and wife to Mary E. Koett; the necessity of a roadway across the land retained by Davis; and the existence of such necessity at the time of severance of the two estates. When these circumstances are present, the requisites for the creation of an easement of necessity are satisfied. *Estate of Waggoner v. Gleghorn*, 378 S.W.2d 47 (Tex.1964).

■■ One entitled to a way of necessity over the land of another is entitled only to a convenient way which will give him reasonable access to his property. *State v. Black Bros.*, 116 Tex. 615, 297 S.W. 213 (1927). It is, we think, clear from the record that recognizing plaintiff's right to an easement of way over the road designated as "Road X" on the accompanying diagram will give reasonable access to plaintiff's land. There is nothing in the record to indicate that such location of the easement will be inconvenient to defendant or more burdensome than locating the easement at some other location. Further, there is evidence to the effect that persons who leased block 4 from plaintiff's predecessors in title used such roadway as a means of ingress to an egress from what is now plaintiff's land.

There is no reason for granting plaintiff an easement over that strip of land designated on the diagram as "St. C," since such easement is not necessary for the purpose of access.

Defendant points out that giving plaintiff an easement over defendant's land would serve no useful purpose, since plaintiff would still lack access to her land from a public highway. As the diagram indicates, defendant's land does not abut on a public way and is separated from the nearest public street, Roosevelt Street, by a strip of land belonging to third persons by the name of Youngblood. Access to defendant's land from the public street system can be had only by passing over the portion of the Youngblood land which is designated on the diagram by the letter "R," and which abuts defendant's land at the intersection of Road X and Road Y at the southwest corner of defendant's land.

There is no evidence which will support the conclusion that the public has in any way acquired a right to use such portion of the Youngblood land as a way. The only evidence is to the effect that in the past the Youngbloods have permitted plaintiff's and defendant's predecessors in title, and their tenants, to cross such strip, and that C. C. Frazier, who owns the tract of land abutting Road Y north of block 1 is also allowed to cross over the Youngblood land. But all of the testimony is to the effect that such use of the Youngblood land by those entering subdivision 30 is merely permissive. It is, therefore, true that, as defendant points out, granting plaintiff an easement over defendant's land will not insure that plaintiff will have access to her land from the public highway system, and the evidence will not support the conclusion that either plaintiff or defendant is entitled to a way of necessity or a way by implication over the Youngblood land.

■ Nevertheless, in view of Mrs. Youngblood's testimony that she has no objection to use of her property as a means of access by owners of land in subdivision, the granting of an easement to plaintiff over defendant's land will, in fact, result in giving plaintiff the means of going to and from her property by means of the public street system. Under these circumstances, the granting of the easement over Road X does not merely burden defendant's land without benefiting plaintiff's land. The effect of the withdrawal of permission to use their land by the Youngbloods, or their successors, on the continued existence of the way of necessity

can be determined when, if ever, such permission is withdrawn.

The judgment of the trial court is reformed to eliminate therefrom all reference to easements other than an easement over Road X. As so reformed, the judgment of the trial court is affirmed. Each party shall pay one-half of the costs of this appeal.