Wilford N. HANSEN and Vada J. Hansen, husband and wife, Plaintiffs and Appellants,

v.

John J. STEWART and Alice E.K. Stewart, husband and wife, Defendants and Appellees.

No. 19383.

Supreme Court of Utah.

July 28, 1988.

Rehearing Denied Aug. 26, 1988.

Bill Hansen, Payson, for plaintiffs and appellants.

James C. Jenkins, Logan, for defendants and appellees.

ZIMMERMAN, Justice:

Wilford and Vada Hansen brought a quiet title action to settle a boundary dispute with John and Alice Stewart. By stipulation, the only issue presented to the jury was the actual location of a certain corner partially defining the boundary separating the adjoining parcels of land. The jury found in favor of the Stewarts. The Hansens unsuccessfully moved for judgment notwithstanding the verdict or a new trial and then appealed. They challenge various aspects of the way in which the case was tried and the denial of their post-trial motions. We affirm.

The Stewarts purchased a parcel of land in Cache County in 1967. In 1969, the Hansens purchased an adjoining parcel and shortly thereafter claimed that the existing fence dividing the parcels actually encroached several feet onto their property. The Hansens brought a quiet title action, and each party caused the land to be sur-

veyed. The parties then stipulated that the only issue for trial was the actual location of "the Northeast Corner of Lot 12, Block 34, Providence Farm Survey," which served as a common corner for the two parcels as described in their respective chains of title.

■ The Stewarts demanded a jury trial. During trial, the parties presented conflicting evidence on the issue, including the testimony of expert surveyors, as well as various maps and deeds. The jury found that the corner was actually located as claimed by the Stewarts. The Hansens' post-trial motions for a judgment notwithstanding the verdict and for a new trial were denied.[1]

On appeal, the Hansens raise three claims of error: first, that the pivotal question was one of law, not of fact, and, therefore, should have been decided by the court, not the jury; second, that the court should have given the Hansens' proffered jury instructions; and third, that a judgment notwithstanding the verdict or, alternatively, a new trial should have been granted.

■ We first consider the Hansens' claim that the location of the critical corner should not have been decided by the jury. There is a right to a jury trial on all questions of fact in any action to determine the right to possession of real property. *Holland v. Wilson*, 8 Utah 2d 11, 14–15, 327 P.2d 250, 252 (1958); *see* Utah Code Ann. § 78–21–1 (1987); Utah R.Civ.P. 38(a). The present case is clearly one to determine the right to possess real property. Therefore, the Hansens were entitled to have the question of the location of the corner determined by the judge only if that question is one of law. *See* Utah Code Ann. § 78–21–3 (1987).

---

1. The record and the briefs do not clearly indicate whether the Hansens filed a motion for a directed verdict before the case was given to the jury. Ordinarily, the failure to make a motion for a directed verdict forecloses consideration of a later motion for judgment notwithstanding the verdict and any appellate review of the suffi-

ciency of the evidence to support the verdict. *Pollesche v. Transamerican Ins. Co.,* 27 Utah 2d 430, 433 n. 1, 497 P.2d 236, 238 n. 1 (1972); Utah R.Civ.P. 50(b). In this case, however, we proceed on the assumption that the motion was made, because the record is unclear and the Stewarts have not raised this issue.

■ The determination of the actual location of a disputed boundary is often a compound issue which presents questions both of law and of fact. Several complex legal rules have been developed to govern the determination of this issue. These rules specify, *inter alia,* the relative weight to be given various types of evidence that may be used to determine the location of a boundary. For example, natural landmarks are generally preferred over artificial monuments. *See* 12 Am.Jur.2d *Boundaries* § 65 (1964). On the other hand, the determination of factual questions may also be important in boundary cases. For example, whether a specific event occurred or where a particular marker is located may be critical. In any particular case, then, where conflicting evidence of various types is presented, some evidentiary conflicts may be resolved as matters of law, while others may be decided as matters of fact. The appropriate roles of judge and jury are preserved when the judge instructs as to the relative weight to be given each type of evidence and the jury then determines the facts to which those relative weights are to be assigned. *See* 12 Am.Jur.2d *Boundaries* § 116 (1964).

■ In the present case, the trial court followed this course. We therefore find no error in the trial court's submitting to the jury the question of the actual location of the disputed boundary corner.

The Hansens' second claim is that the trial court erred by rejecting or modifying several jury instructions which they submitted regarding, *inter alia,* the allocation of burdens of proof and the relevance of the impact that the jury's decision might have on neighboring property owners. The Stewarts respond that the issue was not properly preserved below.

■ Utah Rule of Civil Procedure 51 provides, "No party may assign as error the giving or failure to give an instruction unless he objects thereto." Utah R.Civ.P. 51; *see Barson v. E.R. Squibb & Sons, Inc.,*

682 P.2d 832, 837 (Utah 1984). And the grounds for any objection must be distinctly and specifically stated. *E.g., Beehive Medical Elec., Inc. v. Square D Co.,* 669 P.2d 859, 860 (Utah 1983). The requirement of a specific objection on the record ensures that the trial court will understand the basis of the objections and have an opportunity to correct any errors before the case goes to the jury. *E.g., State v. Kazda,* 545 P.2d 190, 192–93 (Utah 1976). This requirement also assures that the appellate court will have a record of the grounds asserted below. If, however, the record on appeal fails to demonstrate that the trial court has been given a fair opportunity to avoid an error, we usually will not consider any claim based on that error. *E.g., Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1045 (Utah 1983).

In the present case, the record does not contain the Hansens' proposed instructions, and it does not indicate that an objection was made to the instructions actually given. After this appeal was taken, the Hansens attempted to correct this problem by supplementing the record pursuant to former Utah Rule of Civil Procedure 75(h).[2] That rule allows omissions or misstatements in the record to be rectified by three means: (i) stipulation of the parties; (ii) order of the trial court; or (iii) order of this Court.

The Stewarts refused to stipulate that specific objections regarding the instructions had been made. The Hansens then sought and were granted a hearing by the trial court. The transcript of that hearing shows that the Stewarts again opposed supplementation of the record. At the conclusion of the hearing, the trial judge did not order supplementation.

■ Under rule 75(h), the only remaining avenue for supplementation is an order of this Court. The Hansens have not clearly requested that relief. However, we choose to resolve questions about what the Hansens are requesting in their favor and pro-

---

**2.** Rule 75(h) has since been replaced by the substantially similar rule 11(h) of the Rules of the Utah Supreme Court, which, between January 1985 and April 1987, was known as Utah Rule of Appellate Procedure 11(h). The rule allows errors or material omissions in the trial record to be corrected on appeal. *See* R. Utah S.Ct. 11(h).

ceed to consider the matter. *See* Advisory Committee Note to former Utah R.App.P. 11 (h)(1987) (now R. Utah S.Ct. 11(h)). Based on a review of the transcript of the supplemental hearing, we conclude that the parties and the trial judge agreed that during trial a conference was held in chambers and out of the presence of the court reporter at which some sort of objections were made to the jury instructions. However, the exact nature of the objections made is not clear. Moreover, the parties could not agree upon and the trial judge could not recall specific details of the proposed instructions that were rejected or modified. In their brief on appeal, the Hansens have provided what they claim are copies of their proposed instructions. However, we have no means of verifying the accuracy of the alleged copies. Under all these circumstances, we decline to permit the supplementation of the record to show that the objections required by rule 51 were made.

Rule 51 does allow this Court "in its discretion and in the interests of justice" to review errors in instructions which have not been properly preserved. Utah R.Civ. P. 51. However, "it is incumbent upon the aggrieved party to present a persuasive reason" for exercising that discretion, *E.A. Strout W. Realty Agency, Inc. v. W.C. Foy & Sons, Inc.,* 665 P.2d 1320, 1322 (Utah 1983), and this requires "showing special circumstances warranting such a review." *Cambelt Int'l Corp. v. Dalton,* 745 P.2d 1239, 1241 (Utah 1987). The Hansens have made no such showing. Counsel for the Hansens simply did not adequately preserve the record. Therefore, we will not consider their challenge to the instructions. *See id.; King v. Fereday,* 739 P.2d 618, 621–22 (Utah 1987).

■ The Hansens' final claim is that the evidence was insufficient to support the verdict and that the trial court erred in refusing to grant a new trial or, alternatively, a judgment notwithstanding the ver-

dict ("j.n.o.v."). *See* Utah R.Civ.P. 50 (new trial), 59 (j.n.o.v.). Before this contention is considered, a brief explanation of the applicable standards of review is appropriate. The standard to be applied by the trial court in determining whether to grant a motion for a j.n.o.v. is stricter than the standard for deciding to grant a new trial. A j.n.o.v. can be granted only when the losing party is entitled to a judgment as a matter of law. On the other hand, a new trial may be granted whenever there is evidence that would have permitted entry of a judgment for the losing party. *See King v. Fereday,* 739 P.2d at 620, 621; *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 57–58 (Utah 1986); *see generally* James & Hazard, *Civil Procedure* §§ 7.20, .22 (3d ed. 1985).

■ On appeal, however, when a challenge is made to a trial court's denial of a motion for a j.n.o.v. or a new trial and the challenge is based on a claim that there was insufficient evidence to support the verdict, the different standards governing the trial court in passing on these motions become immaterial because of the differing degrees of discretion we accord trial courts in ruling on these motions. A trial court has some discretion in deciding whether or not to grant a new trial, and we reverse only when that discretion is abused. A trial court has no latitude in passing on a motion for a j.n.o.v.; its decision must be correct. Therefore, an insufficiency-of-the-evidence based challenge to a denial of either motion is governed by one standard of review: we reverse only if, viewing the evidence in the light most favorable to the party who prevailed, we conclude that the evidence is insufficient to support the verdict.[3] *See King,* 739 P.2d at 620, 621; *Price–Orem Inv. Co.,* 713 P.2d at 57–58. Because the Hansens' challenge to the denial of their motions amounts to an attack on the sufficiency of the evidence, they "must marshal all the evidence supporting

---

**3.** Some of our cases have phrased somewhat differently the standard to be employed when reviewing a trial court's denial of an insufficiency-of-the-evidence based motion for a new trial as distinguished from an insufficiency-of-the-evidence based motion for a judgment notwith-

standing the verdict. *E.g., King,* 739 P.2d at 620, 621; *Price–Orem Inv. Co.,* 713 P.2d at 58. However, no operative distinction appears to exist between these standards as they are applied by this Court. *See, e.g., King,* 739 P.2d at 620, 621.

the verdict" and then show that the evidence cannot support the verdict. *Price–Orem Inv. Co.*, 713 P.2d at 58; *see Cambelt Int'l Corp.*, 745 P.2d at 1242 (quoting *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985)); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

▇▇▇ Applying the foregoing standard to the present case, we conclude that the Hansens have not made the necessary showing. During the three-day trial, each side supported its position with deeds, maps, plats, and the testimony of several expert surveyors who had independently retraced the original surveys of the disputed parcels. The Hansens did not object to the admission of any of the material evidence. There were conflicts in the evidence, and as the Stewarts point out, their position was supported in part by the testimony of one of the Hansens' experts. On the record before us, we cannot conclude that the evidence was so slight and insubstantial that it cannot support the verdict for the Stewarts. Therefore, we find no error in the trial court's denial of the motions for a new trial or a judgment notwithstanding the verdict.[4]

We have reviewed the Hansens' remaining arguments and find them to be without merit. The judgment is affirmed.

HALL, C.J., concurs.

STEWART, J., concurs in the result.

HOWE, Associate Chief Justice (dissenting).

I dissent. I believe that the plaintiffs are entitled to judgment as a matter of law.

As the majority correctly states, the only issue at trial was the location on the ground of the northeast corner of lot 12, block 34, Providence Farm Survey. The

defendants' experts concluded that the corner on the ground was 33 feet south of where the plaintiffs' expert placed it. As the majority correctly observes, the location of an obliterated corner must be determined by technical rules which have been adopted by the surveying profession and by the courts. This is accomplished by giving priority to certain types of evidence over other types. When that is done, as I will demonstrate below, the corner must be located on the ground as a matter of law at the location contended for by the plaintiffs.

As can be seen from the accompanying sketch, the plaintiffs and the defendants are adjoining landowners in lot 12, block 34, Providence Farm Survey. The plaintiffs' property is described with reference to the northeast corner of lot 12, while the defendants' property is described with reference to the northwest corner of lot 12. However, the experts for both parties agreed that the two corners should be directly east and west from each other and that for the purposes of this lawsuit, the location of the northeast corner would also automatically locate the northwest corner. The original monument at the northeast corner (if it ever existed) cannot now be found. The southeast corner of lot 12 is marked by a monument, the location of which is not disputed by either party. They also agree on the location of the northeast corner of lot 17, block 8 and that the two points are 2,733 feet apart as shown on the sketch. But because the length (north-south distance) of lot 12 as laid out by the original surveyor is not known, the location of the northeast corner of lot 12 is not readily apparent.

The major difficulty in this case stems from the fact that the plat of the Providence Farm Survey made by the surveyor

---

**4.** The dissent, in advocating that we reverse and enter judgment for the Hansens, effectively asks that we ignore our standards of review and substitute our judgment for that of the jurors. We agree that on the record before us the jury could have reached a decision favoring the Hansens and that a favorable outcome would, perhaps, have been made more likely if the jury had received the instructions that the Hansens now claim were submitted and improperly rejected. In sum, if the Hansens' case had been presented more clearly and forcefully, the jury could have found in their favor.

However, as this case comes to us, the Hansens received a fair trial of their claims, without prejudicial errors of law, and the jury reasonably found in favor of the Stewarts. Under the circumstances, we simply do not see sufficient justification for this Court to step in and substitute its judgment for that of the jury.

who originally laid it out cannot be located. The plat was not recorded, and no copy is available. However, in 1880, one J.H. Martineau made a plat of the Providence Farm Survey which appears to be a representation of how he conceived the original plat. While it was drawn to scale, no dimensions of the lots or blocks are shown. No distances are shown, except Sixth South and Eighth South Streets are designated as four rods (66 feet) wide. All experts agreed that this plat was in all likelihood a "paper" or "office" survey, that is, prepared by Martineau without his actually going on the ground and taking measurements. The Martineau plat has been used by the Cache County recorder and assessor as the basis of the plats they use to show ownership of the various separately owned parcels in the lots and blocks of the Providence Farm Survey and for tax assessment purposes.

Experts for both parties agreed that when a monument has been obliterated, it should be located by following the footsteps of the original surveyor and restoring it where he placed it even though he may have mistakenly placed it at a wrong point. The defendants based their case on the location of the northeast corner of lot 12 largely on the Martineau plat. Their surveyor, relying on the plat's scale of five chains to an inch, scaled the east side of lot 12 along the west side of Sixth East Street as shown on the plat and came up with the distance of 1,320 feet. When he measured 1,320 feet north from the southeast corner of lot 12 (the only known point on the ground in lot 12), he arrived at a point 33 feet south of the Larsen fence corner. The Larsen fence corner is the northeast corner of the Larsen tract as shown on the sketch and is the point where the south line of Eighth South Street and the west line of Sixth East Street coincide. The defendants' expert also relied on the fact that an early deed (1877) conveyed the "west part of the north part of lot 12" and recited that it was 660 feet by 330 feet and contained five acres. The defendants concluded that the "west part of the north part" meant the west one-half of the north one-half, and since lot 12 is undisputably 660 feet wide

(east and west), the north half would have to be 660 feet long, or half of 1,320 feet, to make five acres, which is 217,800 square feet or 660 feet times 330 feet.

On the other hand, the plaintiffs' case rests primarily on the facts that the descriptions in most of the deeds of all landowners in lot 12, past and present, are tied to (or described with reference to) the northeast corner of lot 12 and that everyone has located that corner on the ground at the Larsen fence corner. Some deeds are double-tied, that is, the descriptions are tied to the northeast corner and also to the southeast corner of lot 12, a known and undisputed point on the ground. These deeds show the two corners to be 1,353 feet apart rather than the 1,320 feet which the Martineau plat scaled. The plaintiffs also relied on the fact that all landowners in lot 12 have possessed their tracts and built fences around them in accordance with the measurements from the Larsen fence corner except the defendants' south line, which was only partially fenced until this dispute arose. That fence was south of where it would run if measured from the Larsen fence corner.

The jury found for the defendants, locating the northeast corner of lot 12 at a point 33 feet south of the Larsen fence corner. While jury verdicts are not to be lightly overturned, when well-recognized rules contained in surveyors' manuals and in case law are applied, the verdict cannot stand. These rules give priority to lines of possession maintained by landowners on the ground which have been built with reference to the obliterated corner. In the leading case of *Diehl v. Zanger*, 39 Mich. 601 (1878), the original stakes and monuments set by the original surveyor, Thomas Campau, were obliterated. Twenty-five years later, a city surveyor, after searching for the original stakes and finding none, proceeded to take measurements according to the original plat and to drive stakes of his own. According to this survey, the practical location of the whole plat was wrong and all lines should have been moved between four and five feet to the

east. In a concurring opinion, Justice Cooley wrote:

> The surveyor has mistaken entirely the point to which his attention should have been directed. The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them. No rule in real estate law is more inflexible than that monuments control course and distance,—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks set by Mr. Campau, and if those were discovered they must govern. If they are no longer discoverable, the question is where they were located; and upon that question *the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known; Stewart v. Carleton,* 31 Mich. 270. *As between old boundary fences, and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a lot actually are....*

*Diehl v. Zanger,* 39 Mich. at 605–06 (emphasis added). More recently, in *Wacker v. Price,* 70 Ariz. 99, 216 P.2d 707 (1950), the court, after citing with approval and quoting from *Diehl v. Zanger, supra,* stated:

> [S]ince it has always been the rule that courts must resort and be bound by the best evidence available, it follows that the boundaries fixed by the property owners themselves in the absence of the inability of surveyors to definitely fix the monuments from which the original survey was made must control and that the city surveyor nor any other surveyor has any authority to establish new boundaries which must of necessity affect the property rights of all property owners concerned where they cannot establish title by adverse possession.

*Wacker v. Price,* 70 Ariz. 99, 216 P.2d 707, 711–12 (1950); *see also James v. Hitchcock,* 309 S.W.2d 909 (Tex.Civ.App.1958); *Westgate v. Ohlmacher,* 251 Ill. 538, 96 N.E. 518 (1911); *Trotter v. Stayton,* 41 Or. 117, 68 P. 3 (1902).

Applying the law of the cases[1] just discussed to the instant case, it is clear that the best evidence as to where the original monument marking the northeast corner of lot 12 was located is the lines of possession of the various landowners in lot 12 who have occupied their land and built boundary fences with reference to that corner at a time when the original monument was presumably in place. When that is done, the plaintiffs' contention as to where the monument was located must be upheld. That location is in harmony with all of the lines of possession and boundary fences of the property owners in lot 12 which front on the west side of Sixth East Street. When the plaintiffs' contention is adopted and followed, no lines of possession will be disturbed except the boundary between the plaintiffs' and the defendants' properties which is in dispute in this lawsuit. That boundary, however, has only been partially marked and was obviously incorrect since it ran on a diagonal instead of straight east and west as called for in the defendants' description. On the other hand, if the defendants' contention is adopted as to the location of the obliterated monument, all property owners along Sixth East Street must shift south 33 feet. Since this would put boundary lines through existing houses, both parties agree that this is not practical and that instead the description of each property owner would have to be reformed to conform to the defendants' contention as to the location of the corner. This will mean, however, that the plaintiffs who front on the north boundary of lot 12 will be shorted 33 feet. A 33–foot strip of "no-man's-land" will be created at the top

---

1. This law should not be confused with boundary by acquiescence, dealt with in *Halladay v. Cluff,* 685 P.2d 500 (Utah 1984). Neither party here claims anything by boundary by acquiescence, and that doctrine is not in any way part of this opinion.

of the lot which is not now and has never been part of the public graveled road. (No land has ever been dedicated or conveyed for Eighth South Street.) Experts for both parties agreed that the title to said 33 feet would probably be in the patentee, who would have been dead almost 100 years. This obviously is a very unsatisfactory result.

Not only does the best evidence support the plaintiffs' theory as a matter of law, the defendants' theory as to the location of the corner is seriously flawed. First, the defendants' expert placed the northeast corner of block 34 and the northeast corner of lot 12 at points 33 feet apart. The very Martineau plat upon which he relied showed the two corners to coincide. The Martineau plat also showed Eighth South Street to be 66 feet wide, but all the evidence was that it has always been only 33 feet wide. The Martineau plat also showed Eighth South Street running east of Sixth East Street, but everyone agreed that it never has run east of Sixth East Street and that all of the land there is in private possession and ownership. The Martineau plat contains no measurements or distances upon it except for the streets, and the defendants' contention that the east line of lot 12 should extend only 1,320 feet because it scales that distance on the Martineau plat cannot stand against the practical location on the ground by the various property owners who have occupied and fenced 1,353 feet. If indeed Eighth South Street should contain 66 feet as the Martineau plat shows, the plaintiffs correctly argue that it is equally plausible that the present 33–foot road is the south half of that road and the other 33 feet lie north and not south of that road because block 8 undisputably measures 27 feet longer than 1,320 feet.

In summary, the best evidence obtainable unmistakably places the northeast corner of lot 12 at the point contended for by the plaintiffs. The lines of possession and boundary fences observed and established by the various landowners over a period of many years are silent witnesses of the location of the corner at the Larsen fence corner. These landowners have occupied 1,353 feet along the west side of Sixth East Street. This evidence must prevail over the Martineau plat, which contains no measurements or distances upon it except for Eighth South Street, and all parties agreed that Martineau may have prepared the plat without actually going over the ground. When the Larsen fence corner is adopted as the northeast corner of lot 12, no boundaries will be disturbed except the one in dispute in this case and no reformation of deeds will be required by other property owners in lot 12. No strip of "no-man's-land" will be left, and all property owners, including these plaintiffs and defendants, will have all the property their descriptions call for. The mischief pointed out by Justice Cooley in *Diehl v. Zanger, supra,* will be avoided:

> Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true to the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity.

*Id.* at 605.

I therefore would reverse the judgment of the trial court and direct judgment to be entered in favor of the plaintiffs.

DURHAM, J., concurs in the dissenting opinion of HOWE, Associate C.J.