**2015 UT App 288**

# THE UTAH COURT OF APPEALS

ALLIANT TECHSYSTEMS, INC.,
Plaintiff and Appellee,

*v.*

SALT LAKE COUNTY BOARD OF EQUALIZATION, UTAH STATE TAX
COMMISSION, AND GRANITE SCHOOL DISTRICT,
Defendants and Appellants.

Amended Opinion[1]
No. 20130532-CA
Filed November 27, 2015

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 030917933

Simarjit S. Gill, Kelly W. Wright, and Mary Ellen
Sloan, Attorneys for Appellant Salt Lake County
Board of Equalization

Sean D. Reyes, John C. McCarrey, and Laron J. Lind,
Attorneys for Appellant Utah State Tax Commission

Robert G. Crockett and John E.S. Robson, Attorneys
for Appellant Granite School District

---

1. After our original opinion issued on April 23, 2015, the Salt Lake County Board of Equalization filed a petition for rehearing. We granted the petition and now issue this amended opinion. *See generally* Utah R. App. P. 35(j) ("If a petition for rehearing is granted, the court may make a final disposition of the cause without reargument, or may restore it to the calendar for reargument or resubmission, or may make such other orders as are deemed appropriate under the circumstances of the particular case."). In this amended opinion, we have revised paragraphs 11, 24, 26, and 30. Footnote 2 is new.

David J. Crapo, Pamela B. Hunsaker, Steven P. Young, and Mark K. Buchi, Attorneys for Appellee

JUDGE JOHN A. PEARCE authored this Amended Opinion, in which JUDGES GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

PEARCE, Judge:

¶1     The Salt Lake County Board of Equalization, the Utah State Tax Commission, and Granite School District (collectively, the Board) appeal from the district court's entry of summary judgment in favor of Alliant Techsystems, Inc. (ATK). The district court concluded that ATK does not have exclusive possession of the government land on which it conducts operations and is thus exempt from Salt Lake County's privilege tax. *See generally Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization*, 2012 UT 4, 270 P.3d 441 (defining "exclusive possession" for purposes of establishing a privilege tax exemption). We affirm the district court's entry of summary judgment.

BACKGROUND

¶2     ATK is a for-profit aerospace and defense products corporation. ATK operates on its own property, as well as on land owned by the United States Navy. ATK's use of the Naval Industrial Reserve Ordnance Plant (NIROP) lies at the heart of this dispute. ATK uses NIROP pursuant to a facilities use agreement between ATK and the Navy.

¶3     Because it is owned by the Navy, NIROP is exempt from property taxes. However, subject to certain exemptions, Utah law allows for the imposition of a privilege tax on those who use tax-exempt property in connection with a for-profit business. *See* Utah Code Ann. § 59-4-101 (LexisNexis 2000). In 2000, Salt Lake

County assessed a privilege tax on ATK's use of the NIROP property.

¶4      ATK challenged the privilege tax assessment, arguing that its use of NIROP satisfied a statutory exemption to the privilege tax because ATK did not have "exclusive possession" of the property. *See id.* § 59-4-101(3)(e) (providing that a privilege tax may not be imposed on "the use or possession of any lease, permit, or easement unless the lease, permit, or easement entitles the lessee or permittee to exclusive possession of the premises to which the lease, permit, or easement relates"). Both the Salt Lake County Board of Equalization and the Utah State Tax Commission rejected ATK's argument and upheld the assessment.

¶5      ATK challenged those rulings in the district court, where ATK and the Board filed competing motions for summary judgment on the exclusive-possession issue. The undisputed facts before the district court demonstrated that ATK had exclusive possession of NIROP as against third parties but that the Navy retained some degree of management and control over NIROP. ATK argued that, as a matter of law, it did not have exclusive possession of NIROP because the Navy retained ultimate management and control over the facility. The Board argued that the exclusive possession required for taxation was exclusive possession as against third parties, not exclusive possession as against the owner of the property, and that the Board was therefore entitled to judgment as a matter of law. The district court agreed with the Board that ATK had exclusive possession of NIROP despite the Navy's retention of "traditional levels of management and control." The district court noted that there was "no evidence or argument that anyone other than the Navy, the land-owner, had any possession, use, management, or control" of NIROP. Because the district court concluded that ATK had exclusive possession of NIROP as a matter of law, it granted the Board's summary judgment motion.

¶6    ATK appealed, and the Utah Supreme Court reversed the district court's summary judgment order. *See Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization*, 2012 UT 4, ¶ 38, 270 P.3d 441. The supreme court analyzed section 59-4-101(3)(e) and concluded that the Utah Legislature intended the term "exclusive possession" to have its "ordinary and accepted meaning," *id.* ¶ 23, which is possession "exclusive as against *all* parties, including the property owner," *id.* ¶ 24. The supreme court explained,

> [W]e conclude that "exclusive possession" means having the present right to occupy and control property akin to that of an owner or consistent with a lessee. To qualify as exclusive possession, the user or possessor must have this right over a definite space for a definite time. While not an exhaustive list, examples of the type of control needed for exclusive possession include (1) the general power to admit or exclude others, including the property owner, from any present occupation of the property and (2) the authority to make broad use of the property, with only narrow exceptions.

*Id.* ¶ 28 (citation footnotes omitted).

¶7    The supreme court concluded that the district court had erred by evaluating ATK's possession of NIROP in terms of third-party access without considering whether ATK had exclusive possession as against the Navy. *Id.* ¶ 30. The supreme court remanded the matter to the district court for further fact finding and reevaluation of the exclusive-possession question. *See id.* ¶¶ 37–38. Specifically, the supreme court identified "genuine issues as to the following material facts: (1) whether ATK has the authority to exclude the Navy from any present occupation of NIROP, (2) the extent of ATK's authority to use NIROP, and (3)

whether ATK has been granted a definite space for a definite time." *Id.* ¶ 33.

¶8     On remand, the parties conducted additional discovery. The Board also retained an expert witness to provide testimony on commercial leases and on the operating arrangement between ATK and the Navy. ATK filed a motion to strike the expert's affidavit and report, which the district court granted. Both parties again filed cross-motions for summary judgment on the exclusive-possession issue.

¶9     Applying the supreme court's interpretation of "exclusive possession" to the undisputed facts, the district court concluded that ATK did not have exclusive possession of NIROP. The district court cited a number of undisputed facts in support of that conclusion. The district court noted that the Navy had fenced the NIROP property and posted it with signs stating that the property belonged to the United States government. Further, the operating agreement between ATK and the Navy stated that the unauthorized use of government property can subject a person to fines, imprisonment, or both. The district court concluded that these facts "conflict with the Board's claim that the property is under the exclusive possession of ATK."

¶10     The district court also cited provisions in the facilities use agreement that allowed the Navy to "terminate ATK's right to use NIROP at any time and for any reason." The district court concluded, "[T]hese provisions repudiate the Board's claim that the Facilities Use Contract is for a definite time, one of the requirements for exclusive possession outlined by the Utah Supreme Court in its decision."

¶11     The district court noted that the Navy designated approximately fourteen Navy personnel as its representatives to

deal with NIROP's programmatic and technical requirements.[2] The district court found that "Navy personnel are on the NIROP property on a daily basis and communicate daily with ATK regarding all aspects of maintenance, operation, and usage of NIROP." The district court also noted that "ATK has no authority to exclude the Navy or anyone authorized by the Navy from NIROP." The district court concluded, "The monitoring of the programmatic and technical requirements of NIROP, together with the fact that ATK cannot deny the Navy access to NIROP, can only be viewed as a form of retained right of control that renders ATK's possession less than exclusive."

¶12 The district court determined that a requirement that ATK prioritize use of the facilities for work on behalf of the Navy was not necessarily inconsistent with exclusive possession. However, the district court concluded that "[t]he fact that the Facilities Use Contract requires ATK to obtain permission from the Navy to use the facilities for purposes other than the Navy's Fleet Ballistic Missile System shows that the Navy has a retained right of control which contradicts exclusive possession."

¶13 Finally, the district court highlighted that "the Navy authorizes ATK to use certain enumerated NIROP facilities, but retains the right to change or terminate the list of facilities that ATK may use at any time." The district court cited a provision incorporated into the facilities use agreement allowing the Navy

---

2. In its Petition for Rehearing, the Board argues that we should not consider this fact in our analysis because the Board challenged its accuracy before the district court. The Board did not, however, challenge the district court's factual findings on appeal. Because the Board did not directly challenge the district court's factual findings in its appeal, we assume they are supported by the record. *See Ameritemps, Inc. v. Labor Comm'n*, 2005 UT App 491, ¶ 27, 128 P.3d 31.

to terminate ATK's "authority to use any of the facilities" at any time. The district court concluded, "These provisions conflict with the requirement that ATK have exclusive control over a definite space for a definite time."

¶14    The district court ultimately concluded,

> The directive of the Utah Supreme Court applied to these undisputed facts establishes as a matter of law that ATK does not have possession of the NIROP property to the exclusion of all others. The rights retained by the Navy establish that the possession of the property is shared and therefore ATK does not have "exclusive possession" as that term has been defined by the Utah Supreme Court.

The district court entered summary judgment for ATK and ordered the Salt Lake County Board of Equalization to vacate its privilege tax assessments against ATK and refund previously collected taxes with interest.

ISSUES AND STANDARDS OF REVIEW

¶15    The Board argues that the district court erred in granting ATK's motion for summary judgment—and in denying the Board's own motion for summary judgment—on the issue of "exclusive possession" under Utah Code section 59-4-101(3)(e). "We review the district court's decision to grant summary judgment for correctness, granting no deference to the [district] court." *Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization*, 2012 UT 4, ¶ 17, 270 P.3d 441 (alteration in original) (citation and internal quotation marks omitted). Further, "[a] district court's interpretation of a statute is a question of law, which we also review for correctness." *Id.*

¶16   The Board also argues that the district court erred in granting ATK's motion to strike the affidavit and report of the Board's expert witness. We review the district court's decision to exclude expert witness testimony for an abuse of discretion. *See Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 5, 242 P.3d 762.

¶17   Finally, the Board argues that the district court erred by failing to apply strict rules of statutory construction when applying the exclusive-possession test in light of the privilege tax's intended purpose of closing gaps in the tax laws. "This court review[s] a trial court's interpretation of statutory and case law for correctness, affording no deference to the trial court's ruling." *Antion Fin., LC v. Christensen*, 2013 UT App 60, ¶ 9, 298 P.3d 681 (alteration in original) (citation and internal quotation marks omitted).


ANALYSIS

¶18   Utah Code section 59-4-101 generally provides that a privilege tax may be imposed "on the possession or other beneficial use enjoyed by any person of any real or personal property which for any reason is exempt from taxation, if that property is used in connection with a business conducted for profit." Utah Code Ann. § 59-4-101(1)(a) (LexisNexis 2000). The privilege tax is assessed in "the same amount that the ad valorem property tax would be if the possessor or user were the owner of the property." *Id.* § 59-4-101(2).

¶19   Utah Code section 59-4-101 contains multiple exemptions identifying situations in which a privilege tax may not be assessed. The exemption at issue in this case prevents the imposition of a privilege tax on "the use or possession of any lease, permit, or easement *unless* the lease, permit, or easement entitles the lessee or permittee to *exclusive possession* of the premises to which the lease, permit, or easement relates." *Id.* § 59-4-101(3)(e) (emphasis added). The issues before us on

appeal focus on whether ATK maintains "exclusive possession" of NIROP for purposes of qualifying for the privilege tax exemption contained in section 59-4-101(3)(e).[3]

## I. Exclusive Possession

¶20    The district court originally granted summary judgment to the Board in this case, concluding that ATK had exclusive possession of NIROP because there was "no evidence or argument that anyone other than the Navy, the land-owner, had any possession, use, management, or control" of NIROP. In *Alliant Techsystems, Inc. v. Salt Lake County Board of Equalization*, 2012 UT 4, 270 P.3d 441, the Utah Supreme Court reversed that decision, holding that in order for ATK to have exclusive possession of NIROP for privilege-tax purposes, the possession needed to be exclusive as to all others, including the Navy. On remand, the district court applied the supreme court's definition of exclusive possession and granted summary judgment to ATK, concluding that ATK did not have exclusive possession of NIROP.

¶21    The Board argues that the district court erred in concluding that ATK lacked exclusive possession of NIROP for privilege-tax purposes. In so doing, the Board does not argue that there are disputed facts that should have precluded summary judgment. Rather, the Board argues that the district court erred in applying the test for exclusive possession that the *Alliant*

---

3. Early in the litigation, the district court concluded that ATK used NIROP pursuant to a permit. *See Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization*, 2012 UT 4, ¶ 13, 270 P.3d 441. Although it did not directly address the issue, the Utah Supreme Court treated ATK's use or possession of NIROP under the permit as satisfying the "use or possession of any lease, permit, or easement" requirement of the exception. *See* Utah Code Ann. § 59-4-101(3)(e) (LexisNexis 2000).

court articulated. The Board contends that a proper application of the *Alliant* test to the undisputed facts would have resulted in summary judgment in the Board's favor rather than ATK's.

¶22   We disagree. In *Alliant*, the Utah Supreme Court concluded that "'exclusive possession' means having the present right to occupy and control property akin to that of an owner or consistent with a lessee." *Id.* ¶ 28. In remanding this matter to the district court, the supreme court identified three hallmarks of exclusive possession:

> To have the same present right to occupy or control property as an owner or lessee, an entity *must have* the power to exclude the property owner from occupying the property, the authority to make broad use of the property (with narrow exceptions only), and power over a definite space for a definite time.

*Id.* ¶ 33 (emphasis added).

¶23   The supreme court held that although this was not an exhaustive list, each factor must be present for exclusive possession to exist. *See id.* Thus, we must affirm the district court's summary judgment for ATK if the court correctly determined that ATK's possession of NIROP failed to satisfy any one of the three *Alliant* factors.

¶24   *Alliant* required the district court to assess ATK's "authority to make broad use of [NIROP], with only narrow exceptions." *Id.* ¶ 28. The district court relied on several facts to conclude that ATK's authority to use NIROP does not satisfy the *Alliant* test. The district court noted that Navy personnel are designated to "deal[] with [the] programmatic and technical requirements of NIROP" and that these personnel are "on the NIROP property on a daily basis and communicate daily with ATK regarding all aspects of maintenance, operation, and usage of NIROP." The

court considered the fact that "ATK has no authority to exclude the Navy or anyone authorized by the Navy from NIROP."[4] The court further focused on the facilities use agreement's requirement that ATK "obtain permission from the Navy to use the facilities for purposes other than the Navy's Fleet Ballistic Missile System,"[5] and viewed that restriction as "a retained right of control which contradicts exclusive possession."[6]

¶25   The district court correctly concluded that these facts are incompatible with a conclusion that ATK had the same broad authority to use NIROP that an owner or lessee would have. Indeed, the limitations on ATK's authority to exclude Navy personnel and to conduct non-Navy business without receiving the Navy's permission are consistent with the facts presented in *Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, 232 P.3d 999, a case the *Alliant* court analyzed. In *Osguthorpe*, a purported lease agreement "limited [the lessee's] use of the Property to a 'commercial recreational area,'" "did not allow [the lessee] to exclude others" from the affected property, and "specified the

---

4. In its brief, the Board states that it "disputes the district court's characterization" of this fact. However, the Board does not explain how it disagrees with the district court's characterization.

5. The Board assigns weight to the fact that the Navy had denied only one of ATK's requests to use NIROP for non-Navy work. For purposes of the *Alliant* test, the relevant point centers on ATK's obligation to request permission and not on the Navy's willingness to accede to requests.

6. Although the district court analyzed the fact in the context of whether ATK had been granted a definite space for a definite time, the Navy's ability to change, at any time, which NIROP buildings and facilities ATK could use is also inconsistent with the ability to make broad use of the property as an owner would.

infrastructure [the lessee] could build, including ski lifts, snow-making equipment and similar structures required for a ski area." *Id.* ¶ 27. "In short," the Utah Supreme Court concluded, "the language of the [purported lease] limited [the lessee] in its use of the land, which is characteristic of a nonpossessory interest." *Id.*

¶26 We see no meaningful distinction between *Osguthorpe* and the present case on the issue of possessory authority. As in *Osguthorpe*, the user of the property—ATK—lacks the authority to exclude the property owner—the Navy—from the property. The district court found that "ATK has no authority to exclude the Navy or anyone authorized by the Navy from NIROP," and the facilities use agreement allows the Navy to "terminate ATK's right to use NIROP at any time and for any reason." Also as in *Osguthorpe*, ATK's use of the property is restricted to certain enumerated purposes. ATK is required "to obtain permission from the Navy to use the facilities for purposes other than the Navy's Fleet Ballistic Missile System." Because similar restrictions were sufficient for the *Osguthorpe* court to find a lack of exclusive possession, we cannot conclude that the district court erred in reaching the same conclusion here.

¶27 The district court correctly concluded that ATK lacked the authority to make broad use of NIROP, with only narrow exceptions. *See Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization*, 2012 UT 4, ¶ 28, 270 P.3d 441; *see also Osguthorpe*, 2010 UT 29, ¶ 25 ("'The uses a possessor in land may make of the space within his possession are, in general, undefined and are limited only by the rights of others, while the uses an owner of a nonpossessory interest may make are definitely limited in their scope.'" (quoting Restatement (First) of Property: Easements introductory note (1944))). Without such broad authority, ATK did not have exclusive possession of NIROP under the *Alliant* test,

and the district court properly granted summary judgment to ATK on that issue.[7]

¶28　Nevertheless, the Board raises two overarching arguments against the district court's conclusions. First, the Board argues that the Navy's retained authority over NIROP comported with the provisions of a typical modern commercial lease. The Board reasons that ATK's possession of NIROP therefore satisfied *Alliant*'s exclusive-possession test because ATK's rights to NIROP were "consistent with" those of a typical lessee. *See Alliant*, 2012 UT 4, ¶ 28.

¶29　The *Alliant* decision forecloses this argument. In *Alliant*, the supreme court used the term "lessee" in its formal, black-letter-law sense, to mean one who possesses a bundle of rights closely approximating those of a fee owner:

> [W]e conclude that "exclusive possession" must mean the same present right to occupy and control property that would exist for a fee simple owner of that property. Such a present right to occupy and control property occurs when a user or possessor operates under a lease. Indeed, we have recognized that a lessee has a present possessory interest in property, with the present right to occupy and control property akin to that of the owner.

*Id.* ¶ 25 (citation footnote omitted) (citing 49 Am. Jur. 2d *Landlord and Tenant* § 21 (1996); Cornelius J. Moynihan & Sheldon F. Kurtz, *Moynihan's Introduction to The Law of Real Property* 87 (4th ed. 2005)). Thus, when *Alliant* speaks of possessory rights "akin to" or "consistent with" those of a lessee, it means "a present

---

7. Because we can affirm the district court's exclusive-possession ruling solely on ATK's lack of authority over NIROP, we need not address the other two *Alliant* factors.

possessory interest in property, with the present right to occupy and control property akin to that of the owner." *Id.* ¶ 25. The relevant question, then, is whether ATK has "the same present right to occupy and control property that would exist for a fee simple owner of that property." *Id.* The district court thus properly compared ATK to the groups *Alliant* identified as having exclusive possession—fee simple owners and lessees with rights akin to ownership.

¶30     Second, the Board argues that ATK must be deemed to have had exclusive possession of NIROP because there is no evidence that the Navy or anybody else had exclusive possession of the property. It may be true that ATK currently occupies NIROP and the Navy does not. However, it is the Navy's *right* to enter, occupy, and control NIROP that is inconsistent with ATK's exclusive possession, regardless of whether the Navy chooses to exercise that right. *See id.* ¶ 28 ("'[E]xclusive possession' means having the present *right* to occupy and control property . . . ." (emphasis added)). Thus, the Navy's failure to occupy NIROP is not inconsistent with the district court's conclusion that ATK lacked exclusive possession of NIROP. Moreover, this argument fails to address the presence of Navy personnel tasked with dealing with NIROP's programmatic and technical requirements. Nor does the Board's argument explain the Navy's continued control over the activities that occur on NIROP.

¶31     In *Alliant*, the Utah Supreme Court interpreted "exclusive possession" under Utah Code section 59-4-101(3)(e) to mean "having the present right to occupy and control property akin to that of an owner or consistent with a lessee." *Id.* ¶ 28. The district court correctly concluded that the Navy's continuing ability to limit ATK's activities on the property is incompatible with ATK having exclusive possession of NIROP under the supreme court's definition. The district court therefore properly entered summary judgment in favor of ATK.

## II. The Board's Expert Witness

¶32    The Board also argues that the district court erred in striking the affidavit and opinions of its expert witness. The Board's expert is a Utah attorney with experience negotiating and drafting commercial leases. The Board sought to offer the expert's opinions on the terms of typical modern commercial leases, on whether ATK's possession of NIROP was consistent with those terms, and on whether ATK had exclusive possession of NIROP pursuant to *Alliant Techsystems, Inc. v. Salt Lake County Board of Equalization*, 2012 UT 4, 270 P.3d 441. The district court granted ATK's motion to strike the expert's affidavit and exclude his opinions, concluding that his commercial leasing experience did not qualify him as an expert witness in this matter, that there was no need for expert testimony because the facilities use agreement was unambiguous, and that the expert's affidavit and opinions were inadmissible because they spoke to "the ultimate legal issue" in the case.

¶33    The district court has wide discretion to determine the admissibility of expert testimony. *See De Adder v. Intermountain Healthcare, Inc.*, 2013 UT App 173, ¶ 8, 308 P.3d 543. Accordingly, we will disturb the district court's exclusion of expert testimony "only when it exceeds the limits of reasonability." *Id.* (citation and internal quotation marks omitted).

¶34    The district court's exclusion of the expert's testimony was within the bounds of the court's discretion. The Board acknowledges on appeal that certain aspects of the expert's proposed testimony "arguably venture into the realm of legal opinion." Expert testimony is admissible when it will "help the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a). For summary judgment purposes, whether the undisputed facts surrounding ATK's possession of NIROP satisfied the Utah Supreme Court's interpretation of the "exclusive possession" requirement presents a question of law.

*See Alliant*, 2012 UT 4, ¶ 17. The district court properly excluded the expert's opinion to the extent that it addressed that legal question. *See First Sec. Bank of Utah, NA v. Banberry Crossing*, 780 P.2d 1253, 1258 (Utah 1989) (affirming exclusion of expert testimony on a legal question because "[q]uestions of law are to be determined by the court"); *Ashton v. Ashton*, 733 P.2d 147, 153 (Utah 1987) (holding that an attorney's expert opinion on the effect of a joint tenant's conveyance was inadmissible statement of law).

¶35    The Board argues that other portions of the expert's testimony would have spoken solely to factual issues. Specifically, the expert would have testified as to (1) the rights of possession typically enjoyed by lessees in modern commercial leases and (2) similarities between those rights and the rights enjoyed by ATK under its facilities use agreement with the Navy. However, it was within the district court's broad discretion to determine that this testimony would not have been helpful in resolving the issues before it.

¶36    The Utah Supreme Court required the district court to determine whether ATK has "the present right to occupy and control [NIROP] akin to that of an owner or consistent with a lessee." *Alliant*, 2012 UT 4, ¶ 28. As discussed above, this test contemplates comparison to one who "has a present possessory interest in property, with the present right to occupy and control property akin to that of the owner." *Id.* ¶ 25. The supreme court further identified three specific factual disputes for the district court to resolve, none of which required reference to commercial leasing standards. Under these circumstances, the district court acted within its discretion in applying *Alliant*'s legal standards to the undisputed facts before it without considering the opinions of the Board's expert witness. *See De Adder*, 2013 UT App 173, ¶ 8.

III. Public Policy and Statutory Interpretation

¶37    The Board also argues that the district court erred by failing to apply rules of strict statutory construction when applying the exclusive-possession test. The Board reasons that the privilege tax is intended to close gaps in the tax laws, *see Great Salt Lake Minerals & Chems. Corp. v. State Tax Comm'n*, 573 P.2d 337, 339 (Utah 1977), and that tax exemptions "are strictly construed," *Corporation of Episcopal Church in Utah v. Utah State Tax Comm'n*, 919 P.2d 556, 558 (Utah 1996). The Board appears to argue that the district court should have applied these considerations notwithstanding the Utah Supreme Court's express interpretation of Utah Code section 59-4-101(3)(e)'s exclusive-possession requirement. *See Alliant Techsystems, Inc. v. Salt Lake County Bd. of Equalization*, 2012 UT 4, ¶¶ 20–30, 270 P.3d 441.

¶38    The case was before the district court on remand from the supreme court, which had interpreted the exclusive-possession requirement in the context of this very case. *See id.* The district court was not at liberty—nor are we—to disregard the supreme court's application of the rules of statutory interpretation to section 59-4-101(3)(e), *see id.* ¶ 23 ("The application of our tools for statutory interpretation makes clear, however, that the legislature intended that 'exclusive possession' have its ordinary and accepted meaning."). The district court acted correctly when it applied the supreme court's interpretation of section 59-4-101(3)(e)'s exclusive-possession requirement without considering the competing public policy and statutory interpretation considerations the Board advances.

CONCLUSION

¶39    In light of the undisputed facts before it, the district court did not err in concluding that ATK did not have exclusive possession of NIROP, because ATK did not have "the present right to occupy and control [NIROP] akin to that of an owner,"

*Alliant*, 2012 UT 4, ¶ 28, or rights consistent with a lessee "with the present right to occupy and control [NIROP] akin to that of the owner," *id.* ¶ 25. The district court also acted within its discretion in striking the Board's expert witness. Finally, neither this court nor the district court may rewrite the Utah Supreme Court's interpretation of Utah Code section 59-4-101(3)(e) to accommodate the Board's statutory interpretation and public policy arguments. We therefore affirm the district court's entry of summary judgment in ATK's favor.

———————