**2016 UT App 179**

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ESTATE OF VERN A. ANDERSON

DENISE TERRY,
Appellant,

*v.*

BRYAN J. ANDERSON,
Appellee.

Memorandum Decision
No. 20140382-CA
Filed August 25, 2016

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 103900939

Margaret S. Edwards, Attorney for Appellant

Brent K. Wamsley, Attorney for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this
Memorandum Decision, in which JUDGES J. FREDERIC VOROS JR.
and KATE A. TOOMEY concurred.[1]

GREENWOOD, Senior Judge:

¶1 Denise Terry appeals the trial court's exclusion of her expert witness report and its denial of her motion for a new trial. We affirm.

¶2 Vern A. Anderson (Anderson) died in February 2009. In November of that same year, his son, Bryan J. Anderson (Bryan),

---

1. Senior Judge Pamela T. Greenwood sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

filed an application for the informal administration of Anderson's estate, indicating that Anderson had died intestate. The trial court appointed Bryan as personal representative for Anderson's estate. Anderson's daughter, Denise Terry (Denise), thereafter filed a motion to set aside the appointment, alleging that Anderson had executed a will in 1980 that, to her knowledge, had never been revoked. She also indicated that she was in possession of both the will and a gift letter signed by her father, dated January 1, 2008, which purportedly gave Denise all of Anderson's "personal belongings, possessions [a]nd properties including two homes located in Kearns, Utah." Denise asserted that she had been the caregiver for both her father and mother prior to their deaths. Bryan contested the authenticity of the gift letter, and the parties prepared to proceed to trial on that issue.

¶3     In February 2012, Bryan designated Kathy S. Carlson as his expert witness and forensic document examiner. In March 2012, Denise disclosed that she intended to call George J. Throckmorton as her expert witness. Each party disputed some aspect of the other's expert designation, but at a pretrial conference in August, the trial court and the parties agreed that the court would appoint a single expert witness to serve in the case, for whom the parties would share the cost.[2] In October, "[a]fter reviewing the qualifications of the proposed experts, the Court [found] that James A. Tarver, Forensic Document

---

2. Our review of the record reveals that the trial court recommended the appointment of a joint expert, and neither party objected. Bryan frames this process as an "agreement" that the court would appoint a joint expert. In her reply brief, Denise does not contest this characterization. Thus, while Denise did not agree to the specific expert selected by the court, she does appear to have agreed to undergo the court's recommended joint-expert selection process.

Examiner, [was] the best qualified to serve as the Court's expert in this matter." The parties submitted to the trial court their questions for Tarver, and Tarver provided answers to the questions, along with other relevant findings, in a "document examination report."

¶4    As the date set for trial approached, Denise provided Bryan with a binder of proposed exhibits. Bryan filed an objection to several of the proposed exhibits, including an expert witness report prepared by Denise's preferred expert, Throckmorton. Denise responded to the objection that the report should be allowed "because it is an expert witness report on the reliability and validity of the signature found [on] the gift letter[]." She contended, "This expert witness report establishes that it would be impossible to determine whether or not the signature is valid, due to the vast amount and variety of medicine that [Anderson] was under the influence [of] at the time." But at trial, when Bryan's attorney reminded the court that there were outstanding objections that needed resolution, Denise's attorney stated, "I think we will agree to letting the objections go forward. We don't need the things that he -- I've taken them out. I'm not going to be using them today." Accordingly, referring to the objected-to exhibits and to Denise's attorney's concession, the trial court decided to "exclude those from the record by virtue of that."

¶5    After the conclusion of trial, the court entered written findings of fact and conclusions of law. It determined that the gift letter Denise presented was "not trustworthy" for several reasons. These reasons included that the "type set of the gift letter and the notary block are different and do not match"; that the "expiration date on the Notary's Stamp does not match the date written in the Notary Block"; that there "was no reference to a notary log kept by the Notary Public, which would have assisted the Notary Public in his testimony"; that the "signatures on these two exhibits are not the same"; that "both parents were the owners of the real properties and both were alive on the date

these documents were signed; however, these documents are not signed by both parents"; and that Tarver had "stated in his report that it is highly probable that the signatures on these documents are not genuine." The court separately found that the will was "trustworthy and was evidence of [Anderson's] wish that each child share equally in the distribution from his estate and that the gift letter[ was] not consistent with his wishes as expressed in his Last Will and Testament." Thus, the properties alluded to in the purported gift letter were part of Anderson's estate and would be administered according to Anderson's will.

¶6    Denise filed a motion for a new trial, arguing that the evidence at trial was insufficient to support the court's conclusion that the gift letter was not trustworthy. The trial court denied the motion, asserting that "[Denise] had the burden of proof to establish that two homes owned by the late [Anderson] prior to his death are properly gifted to her and were not property of [Anderson's] estate" and that Denise had "failed to meet that burden." "In addition to the findings made previously, the Court note[d] that the only expert in the case found the gift letter[] to [be] forge[d]" and that Denise "offered no expert testimony to the contrary." Denise appeals.

¶7    We are tasked with deciding two issues. First, we consider whether the trial court "improperly excluded" Throckmorton's expert witness report. We review the trial court's decision regarding the exclusion of expert witness testimony for an abuse of discretion. *Alliant Techsystems, Inc. v. Salt Lake County Board of Equalization*, 2015 UT App 288, ¶ 16, 363 P.3d 530. Second, we consider whether the trial court erred when it denied Denise's motion for a new trial. We generally review this issue for an abuse of discretion. *Clayton v. Ford Motor Co.*, 2009 UT App 154, ¶ 5, 214 P.3d 865. But because Denise's challenge rests on a claim of insufficiency of the evidence, "we [will] reverse only if, viewing the evidence in the light most favorable to the prevailing party, the evidence is insufficient to support the verdict." *Id.*

¶8 To begin, we are not persuaded that Denise preserved her challenge to the exclusion of Throckmorton's report. Denise suggests that she preserved this issue when she filed her response to Bryan's objection to the report. But she fails to address the subsequent agreement "to letting the objections go forward" because she would not be using those exhibits at trial. In her reply brief, she does assert that the "trial court clearly ruled on the Throckmorton Report by excluding it based on the objection and not due to the withdrawal of it from evidence." Yet this conclusion is the exact opposite of what the transcript "clearly" depicts. Following Denise's assertion that she would not be using the report, the trial court indicated it would "exclude those from the record by virtue of that." Given the order of the discussion before the trial court, "that" is clearly a reference to Denise's agreement not to use the report. And if this had not been Denise's intention, we would expect to see some clarification made on the record or an attempt to introduce the report as an exhibit—neither of which occurred at trial.[3]

¶9 "An issue is preserved for appeal when it has been presented to the [trial] court in such a way that the court has an opportunity to rule on that issue." *Wolferts v. Wolferts*, 2013 UT App 235, ¶ 19, 315 P.3d 448. While the facts of this case indicate that the issue was—briefly—presented to the trial court, the court did not actually have "an opportunity to rule on that issue." *See id.* When Denise agreed not to use the report at trial, she effectively withdrew her response to Bryan's objection, and the trial court had no need to rule on that response. *Cf. State v. McNeil*, 2013 UT App 134, ¶ 23, 302 P.3d 844, *aff'd*, 2016 UT 3, 365

---

3. We further note that Denise failed to include the alleged exclusion of Throckmorton's report as a ground for relief in her motion for a new trial. And in denying the motion, the trial court explicitly found that Denise "offered no expert testimony." This finding supports our reading of the trial transcript.

P.3d 699 ("A claim is not preserved for appeal if a party initially objects but later, while 'the wheel's still in spin,' abandons the objection and stipulates to the court's intended action." (footnote omitted) (quoting Bob Dylan, The Times They Are A–Changin' (Columbia Records, 1964)); *Williams v. Williams*, 2004 UT App 245U, para. 3 (explaining that where a party fails to request a ruling on an issue, "there is no ruling for us to review")). Thus, the trial court's "exclusion" of Throckmorton's expert witness report was actually an acknowledgement of Denise's decision to withdraw the report from evidence.

¶10   But even if the trial court's statement that it would exclude the report "by virtue of that" could be taken as sustaining Bryan's objection to the report, we would still affirm the court's exclusion of that report. First, Denise agreed to the trial court's appointment of the sole expert for the case. And second, she cannot show that admission of Throckmorton's expert witness report would have affected the outcome of trial.

¶11   In the course of discovery, Bryan and Denise each disclosed an intended expert witness. Then, Bryan sought to amend his disclosures to include another expert witness. Denise objected, indicating that she was "on a limited budget" and that adding another expert "would cause great disadvantage and prejudice" to her. Acknowledging that multiple experts would cost Denise and the estate more money, the court and both parties agreed to hire one joint expert.

¶12   When Bryan objected to Denise's proposed admission of Throckmorton's report, he argued that because "all of the parties have already accepted James A. Tarver as the Court's appointed expert, the Court should not allow these pages as trial exhibits in this matter." Thus, if in fact the court did sustain Bryan's objection at trial, it did so on those grounds. The parties' agreement to use Tarver as an expert was an implicit agreement not to use Throckmorton or the expert witness that Bryan had originally disclosed. We fail to see how the trial court's decision

to enforce such an agreement can be considered an abuse of discretion. *See Kerby v. Moab Valley Healthcare, Inc.*, 2015 UT App 280, ¶ 24, 362 P.3d 944 ("The trial court has broad discretion to admit or exclude evidence." (citation and internal quotation marks omitted)).

¶13 "However, even if the trial court abused its discretion, we will reverse only if we find that the error is harmful." *State v. Archuleta*, 850 P.2d 1232, 1240 (Utah 1993). In the present case, any error in excluding Throckmorton's report was harmless. A "harmless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings." *State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888.

¶14 The trial court conducted a thorough review of proposed experts before deciding that Tarver was "the best qualified to serve as the Court's expert in this matter." The court's decision that Tarver was the best sheds light on Tarver's perceived credibility, and his opinions likely carried significant weight with the court. Additionally, while Tarver was able to conclude that "[i]t is highly probable that the questioned Anderson signatures . . . are not genuine," Throckmorton was unable to form such a definite conclusion, let alone a conclusion that the signatures were in fact genuine. Instead, Throckmorton opined only that he "could not determine if the signatures on the documents were genuine or forged." The trial court indicated that Denise had the burden of proving that the gift letter was genuine. Given that Throckmorton's report did little to establish the gift letter's authenticity, we are not convinced that admission of the report would have changed the outcome of trial.[4]

---

4. This is to say nothing of the other evidence—presented independently from the expert testimony—that the trial court used to support its ultimate conclusion that the gift letter was not genuine. *See infra* ¶ 17.

¶15 We next consider the trial court's denial of Denise's motion for a new trial. After the trial court had issued its written conclusions, Denise urged the court to grant a new trial, "as insufficient evidence was relied upon for the court to conclude that the document is not trustworthy." The evidence was insufficient, Denise argued, because "[p]erfectly adequate explanations exist for the aspects of the documents held by the court to be deficient." But "[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing" the trial court's findings or indicate that they are supported by insufficient evidence. *See State v. Howell*, 649 P.2d 91, 97 (Utah 1982); *see also Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 18, 305 P.3d 196 ("We defer to the trial court's advantaged position to weigh that conflicting evidence.").

¶16 For Denise to demonstrate that the trial court erred in denying her motion for a new trial, she must show that the trial court relied on insufficient evidence to support its conclusions of law. "In other words, demonstrating insufficiency of the evidence requires an appealing party to show that all the evidence in favor of the verdict cannot support the verdict." *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557 (citation and internal quotation marks omitted).

¶17 In its findings of fact and conclusions of law, the trial court highlighted several pieces of evidence that supported its ultimate conclusion that the gift letter was not genuine. *See supra* ¶ 5. Perhaps most telling, Tarver—as the only expert witness— opined that Anderson's purported signature on the gift letter was not genuine. This opinion was bolstered by the court's findings that the "type set of the gift letter and the notary block are different and do not match" and that the "expiration date on the Notary's Stamp does not match the date written in the Notary Block." The court noted that the notary public's testimony would have been more helpful if he had kept a notary log. It also found persuasive that the gift letter included no reference to or signature by Anderson's wife, who jointly owned

the properties referenced in the gift letter as of the date of the letter. Viewing this evidence in the light most favorable to Bryan, the prevailing party, we cannot conclude that this evidence is insufficient to support the trial court's conclusion.[5] *See Heslop v. Bank of Utah*, 839 P.2d 828, 839 (Utah 1992).

¶18 We are not persuaded that Denise effectively offered Throckmorton's expert report as an exhibit at trial due to her agreement to jointly use a single expert witness, Tarver, and her

---

5. Denise also challenges the trial court's conclusion in its denial of her motion for a new trial that Denise "failed to marshal the evidence in support of the Court's findings and Order and show how they were not sufficient to support the ruling." Denise correctly asserts that "there is nothing in [rule 59 of the Utah Rules of Civil Procedure] that requires that the party marshal the evidence in the motion [for a new trial]." And while it might have been inappropriate for the trial court to reference a marshaling requirement when no such requirement exists, we are confident that this observation had no impact on the trial court's denial of Denise's motion for a new trial. The court enumerated six points that contributed to its denial of the motion. Denise's supposed failure to marshal the evidence was only one of those points. Setting aside any mention of a marshaling requirement, the trial court still ruled that (1) the findings were sufficient to support the court's conclusions; (2) Denise had the burden to prove that the gift letter was genuine; (3) Denise failed to meet that burden because "all of the evidence presented at trial established that the gift letter[ was] not trustworthy and [was] forge[d]"; (4) "the only expert in the case found the gift letter[] to [be] forge[d]" and Denise "offered no expert testimony to the contrary"; and (5) "there were irregularities in the notarization of the gift letter[]," which "supported the findings of the expert that the gift letter[ was] forged."

voluntary withdrawal of the report, and thus we cannot conclude that the trial court excluded it—let alone erroneously. We nevertheless determine that even if the trial court erred by not accepting Throckmorton's report, any such error was harmless. Furthermore, the evidence at trial was sufficient to support the court's findings of fact and conclusions of law, and the trial court therefore did not err in denying Denise's motion for a new trial.

¶19   Affirmed.

——————————