2022 UT App 83

## THE UTAH COURT OF APPEALS

JILL NIX,
Appellee,
*v.*
ROLAND COMPTON NIX JR.,
Appellant.

Opinion
No. 20200691-CA
Filed June 30, 2022

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 174402122

Seth D. Needs, Attorney for Appellant

D. Grant Dickinson, Attorney for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

TENNEY, Judge:

¶1　Under the Utah Code, there are ten "[g]rounds for divorce," one of which is "adultery committed by the respondent subsequent to marriage." Utah Code Ann. § 30-3-1(3)(b) (LexisNexis 2019). Interpreting this provision, our supreme court has held that evidence of adultery "subsequent to the filing of a divorce complaint is inadmissible for the purpose of establishing grounds for divorce," though it can be "admissible as lending weight to and corroborating testimony as to prior acts" of infidelity. *Vrontikis v. Vrontikis*, 358 P.2d 632, 632 (Utah 1961).

¶2　When Jill Nix filed for divorce from Roland Nix Jr., she alleged "adultery committed by Roland during the marriage" as one of "the grounds for dissolution of this marriage." During his subsequent deposition, Roland declined to answer a question

from Jill's attorney about whether he'd had extramarital sexual relations "since the marriage." The district court later concluded that this non-response constituted an adoptive admission that Roland had committed adultery before Jill filed for divorce. Based on this conclusion, the court awarded Jill a divorce on the ground of adultery.

¶3     Roland now appeals that decision. As explained below, we agree that Roland's non-response did not provide sufficient evidence to establish that Roland committed adultery before Jill filed her divorce petition. We accordingly reverse.

BACKGROUND[1]

¶4     Jill filed for divorce from Roland in August 2017. In her petition, Jill asserted two "grounds for dissolution of [the] marriage," one of which was "adultery committed by Roland during the marriage." Jill also asserted cruelty as an alternative ground for divorce. But that alternative ground was not further litigated below, the district court never ruled on it, and neither party has raised any issue about it on appeal.

¶5     In his answer, Roland "denie[d]" Jill's "[g]rounds." But Roland did not want the marriage to continue, so he counter-petitioned for divorce on the ground of irreconcilable differences.

¶6     Roland was later deposed. During his deposition, the following exchange occurred between Jill's counsel, Roland, and Roland's counsel:

---

1. Because the parties share the same last name, we'll follow our normal practice and refer to them by their first names, with no disrespect intended by the apparent informality. Also, for purposes of consistency and readability, we'll use the parties' first names (and corresponding pronouns) when quoting references to them from the record or the briefing, and we'll do so without using brackets to note any such alterations.

> [Jill's counsel:] Have you had any sexual relations with someone other than Jill since the marriage?
>
> [Roland:] It is none of your business.
>
> [Jill's counsel:] Counsel I am entitled to know.
>
> [Roland's counsel:] I question the relevance. I don't think that adultery or anything has been alleged in the pleadings.
>
> . . . .
>
> [Roland:] We are separated and that is none of their business.
>
> . . . . [brief break taken by the parties]
>
> [Jill's counsel:] We left on the question of adultery. Mr. Nix what is your response?

After another objection and then more discussion between counsel, Roland made a somewhat vague reference to a woman with whom he'd apparently had some type of relationship. A short time later, Roland was asked, "And have you engaged in sexual relations with this person?" Roland answered, "Yes."

¶7 Roland and Jill eventually settled most aspects of their divorce. But when they weren't able to agree on the ground for divorce, Jill's counsel requested a trial on that issue. At a scheduling conference, however, the parties and the court agreed on an alternative procedure under which the parties would submit memoranda about the ground for divorce, after which the court would hear oral argument on the matter.

¶8 In her memorandum, Jill pointed to Roland's non-response to the deposition question of whether he'd "had any sexual relations with someone other than Jill since the marriage." From this, Jill asked the court to draw "an adverse inference" that Roland had "committed adultery subsequent to the marriage." In addition, Jill pointed to Roland's express admission that he'd "engaged in sexual relations with this person."

¶9     In his responsive memorandum, Roland asked the court to deny Jill's request for an adultery-based divorce. Roland asserted that under *Vrontikis v. Vrontikis*, 358 P.2d 632 (Utah 1961), any adultery that he had committed after Jill filed for divorce could not constitute a ground for divorce. And Roland then argued that Jill had offered no evidence that he had "committed adultery prior to her filing for divorce."

¶10     After briefing and then a hearing, the district court issued a written decision. There, the court agreed that under *Vrontikis*, "adulterous conduct subsequent to a divorce petition does not constitute fault," but that "evidence of such conduct can be used to lend weight" to other evidence that the party had "committed adultery prior to the divorce petition." (Emphases omitted.) The court then concluded that although Roland had expressly admitted to adultery in his deposition, this express admission had only been to "adultery subsequent to the divorce petition, but prior to divorce finalization."[2]

¶11     Given its understanding of *Vrontikis*, the court next considered whether there was any evidence of pre-filing adultery. The court concluded that there was. In the court's view, Roland's non-response to the deposition question about whether he'd had sexual relations "since the marriage" qualified as an adoptive admission under rule 801(d)(2)(B) of the Utah Rules of Evidence. Notably, the court not only regarded this as proof "that Roland did commit adultery," but also as proof "that Roland's adultery caused the divorce," i.e., proof that the adultery happened pre-filing. Thus, the court concluded that even if "Roland's express admission [was] not, stand[ing] alone, a grounds for fault, the adoptive admission satisfie[d] Jill's burden to show that Roland's

---

2. We note that Roland did not actually draw this chronological line in the portion of the deposition in which he made his express admission. But neither party has challenged the court's determination that the express admission was only to post-filing adulterous conduct.

adultery caused the divorce." Based on this, the court later "awarded Jill a decree of divorce on the grounds of adultery."

¶12 Roland subsequently filed a motion under rule 59 of the Utah Rules of Civil Procedure "for [a] new trial or for an alteration of judgment on the issue of grounds for divorce." Roland challenged the district court's ruling on several fronts, including procedural fairness, incorrect application of the adoptive admission standard, and insufficiency of the evidence. After Jill opposed the motion, the court denied it. Roland timely appealed.

ISSUE AND STANDARD OF REVIEW

¶13 Roland challenges the district court's denial of his rule 59 motion. As he did below, Roland assails this ruling for several reasons. We need address only one of them: Roland's contention that there was insufficient evidence to support the court's determination that he committed adultery before Jill filed for divorce.

¶14 A district court ordinarily has "some discretion in deciding whether or not to grant a new trial." *Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). But because Roland's "challenge rests on a claim of insufficiency of the evidence, we will reverse only if, viewing the evidence in the light most favorable to the prevailing party, the evidence is insufficient to support the verdict." *In re Estate of Anderson*, 2016 UT App 179, ¶ 7, 381 P.3d 1179 (quotation simplified); *accord Hansen*, 761 P.2d at 17.

ANALYSIS

¶15 The district court determined that Roland had committed adultery before Jill filed for divorce. It based this determination on Roland's non-response to a question about this subject in his deposition, which the court regarded as an adoptive admission of pre-filing adultery.

¶16    On appeal, Roland first argues that the district court erred in concluding that his non-response qualified as an adoptive admission. But we need not decide whether this was so. Even assuming for the sake of argument that the non-response did qualify as an adoptive admission, the court was still required to point to some evidence that Roland had committed adultery before Jill filed for divorce. *See Vrontikis v. Vrontikis*, 358 P.2d 632, 632 (Utah 1961) (holding that evidence of adultery "subsequent to the filing of a divorce complaint is inadmissible for the purpose of establishing grounds for divorce," though it can be "admissible as lending weight to and corroborating testimony as to prior acts" of infidelity).

¶17    Roland argues that there was no such evidence. Of note, Roland points out that, in the deposition exchange at issue, he "was never specifically asked whether he had had sexual relations with someone other than Jill since the marriage, but prior to the filing of the petition for divorce." Having reviewed the portion of the deposition that is in the record, we agree. While Jill's counsel asked Roland *whether* he had engaged in extramarital sexual relations, Jill's counsel never asked Roland *when* he had done so. As a result, with respect to the critical issue of timing, the question and non-answer that supported the court's adoptive-admission determination were silent.

¶18    Jill nevertheless points to Roland's express admission of adultery. But on this, the district court only found that Roland had expressly admitted to *post-filing* adultery, and Jill has not challenged the court's temporal limitation of its own finding on appeal. In any event, we've reviewed the exchange ourselves. We see nothing in it in which Roland said that his extramarital conduct was limited to post-filing behavior, but we also see nothing in it in which he admitted to any pre-filing conduct. Instead, as with the (alleged) adoptive admission, the timing of Roland's behavior simply never came up.

¶19    This same defect exists with respect to the small amount of other evidence that Jill provided below to inferentially support

her claims about Roland's adultery. For example, Jill provided the court with a check that Roland had given her for alimony. This check was embossed with a picture of Roland and another woman, and in the identification block in the upper corner, it identified the other woman's last name as "Nix." Even accepting Jill's contention that this could inferentially show that there was a sexual relationship between Roland and the other woman, what matters here is that the check was dated September 2019—which was after Jill had filed for divorce.

¶20    This leaves us with Jill's final argument, which is to rely heavily on the favorable standard of review. Because Roland challenges the district court's ruling on sufficiency grounds, we're required to view the evidence in the light most favorable to the district court's determination. But Roland's argument presents us with a "no evidence" challenge—i.e., he argues that "even with the evidence in the record, nothing would demonstrate that . . . Roland committed adultery prior to the filing of the Petition for Divorce." And to defeat such a claim, Jill "need only point to a scintilla of credible evidence from the record that supports the finding of fact in order to overcome [Roland's] 'no evidence' assertion." *Wilson Supply, Inc. v. Fraden Mfg. Corp.*, 2002 UT 94, ¶ 22, 54 P.3d 1177.

¶21    She hasn't. Even on such a review, there must be *some* evidence to support the determination in question. As we have explained in another context, a "reviewing court will stretch the evidentiary fabric as far as it will go," but "this does not mean that the court can take a speculative leap across a remaining gap in order to sustain a verdict." *State v. Pullman*, 2013 UT App 168, ¶ 14, 306 P.3d 827 (quotation simplified). Here, the evidence demonstrates that Roland engaged in sexual activity with another woman before his divorce was finalized. After all, he expressly admitted as much. But *Vrontikis* requires evidence of adultery at a particular time—namely, before the petitioner filed for divorce. Jill points to no evidence, and we see none, that even inferentially says anything about *when* Roland engaged in extramarital sexual activity. Without such evidence, the district court's finding that

Roland had engaged in pre-filing extramarital sexual relations cannot stand. We accordingly reverse for insufficient evidence.[3]

CONCLUSION

¶22　There was insufficient evidence to support the district court's determination that Roland committed adultery before Jill filed for divorce. We accordingly reverse that decision and remand this case for further proceedings consistent with this opinion.[4]

_____

3. Our determination leaves a potential wrinkle about what should happen next. At the close of his brief, Roland asks us to not only reverse on insufficiency grounds, but also to "alter the Ruling" ourselves to grant him a divorce on "the grounds of irreconcilable differences." Roland provides us with no authority that establishes our ability to modify an order in this manner, however, so this request is inadequately briefed. Moreover, Jill petitioned for divorce on an alternative ground, but neither party on appeal has competently briefed the question of whether Jill would be entitled to continue litigating that ground if we reverse the district court's adultery-based decree. Without such briefing, we decline to decide the question in the first instance.

4. Jill has asked for her attorney fees on appeal. *See* Utah R. App. P. 24(a)(9). Because she is not the prevailing party in this appeal, we deny her request.